(February 10, 1927.)

## PRICE PRODUCE & COMMISSION COMPANY, a Corporation, Respondent, v. INTER–MOUNTAIN ASSOCIATION OF CREDIT MEN, a Corporation, Appellant.

[253 Pac. 854.]

PRINCIPAL AND AGENT — EVIDENCE — ERRONEOUS INSTRUCTION ON IMPEACHING EVIDENCE—STATUTORY METHOD OF IMPEACHING WITNESS OBLIGATORY.

1. Where B. mortgaged its store and stock to I., and L. was placed in charge as manager and bought goods for the store, *held* that I., being sued for price thereof, as bearing on the issue of whose agent L. was, could introduce the minute-books of B., showing employment of L. by B. as manager.

2. One suing mortgagee of store for price of goods bought, for the store by L., its manager, having shown, for purpose of proving that L. was mortgagee's agent, that the bank account of the store was carried in mortgagee's name, mortgagee could introduce testimony to explain why bank account was so carried.

3. Where P. testified that L. made a certain statement, and L. denied that he did, and L., on cross-examination, was asked if, at a certain time and place, in the presence of certain persons, he made such statement, and answered that he did not, and no attempt to show that he did was then made, giving an instruction on the theory of impeaching testimony having been introduced was error.

4. C. S., sec. 8036, as to method by which party may impeach own witness should be substantially followed.

APPEAL from the District Court of the Ninth Judicial District, for Jefferson County. Hon. Geo. W. Edginton, Judge.

Publisher's Note.

See Agency, 2 C. J., sec. 542, p. 859, n. 78; sec. 706, p. 943, n. 90.
Chattel Mortgages, 11 C. J., sec. 1, p. 399. n. 3; sec. 247, p. 551, n. 98, 99.
Corporations, 14 C. J., sec. 2445, p. 531, n. 15; sec. 2460, p. 541, n. 87.
Trial, 38 Cyc., p. 1732, n. 94.
Witnesses, 40 Cyc., p. 2563, n. 94.

Action on account for goods sold and delivered. Judgment for plaintiff. *Reversed and remanded.*

Wm. P. Hemminger and B. W. Davis, for Appellant.

Evidence of the facts tending to show true relationship of an alleged agent are admissible to prove the question of agency. (*Rosnagle v. Armstrong,* 17 Ida. 246, 105 Pac. 216; *Hallack-Sayre-Newton Lbr. Co. v. Blake,* 4 Colo. App. 486, 36 Pac. 554; *Pharr v. Gall,* 108 La. 307, 32 So. 418; *Schmidt v. Packard,* 132 Ind. 398, 31 N. E. 944; *Davis v. Benedict,* 49 Neb. 119, 68 N. W. 398; *Scull v. Skilton,* 70 N. J. L. 792, 59 Atl. 459; *Callihan v. Washington Water Power Co.,* 27 Wash. 154, 91 Am. St. 829, 67 Pac. 697, 56 L. R. A. 772.)

A party is bound by the testimony of his own witness and cannot impeach the testimony of such witness in the absence of any showing of surprise or fraud, nor can impeaching questions be asked for the purpose of discrediting a witness when no proof is offered to support the questions asked. (C. S., sec. 8036; *State v. Fowler,* 13 Ida. 317, 89 Pac. 757; *Boeck v. Boeck,* 29 Ida. 639, 161 Pac. 576; *State v. Irwin,* 9 Ida. 35, 71 Pac. 608, 60 L. R. A. 716.)

The court cannot properly pick out any instruction and lay undue stress upon it. Instructions must be applicable to the facts. (*Gwinn v. Gwinn,* 5 Ida. 271, 290, 48 Pac. 295; 14 R. C. L. 780, and cases cited.)

The evidence is insufficient to support the verdict. (*Merchants' National Bank v. Nichols & Shepard Co.,* 223 Ill. 41, 79 N. E. 38, 7 L. R. A., N. S., 752; *Pease v. Finch,* 3 Cal. App. 371, 85 Pac. 657.)

Harry Holden, for Respondent.

Whatever evidence has a tendency to prove the agency is admissible, even though it be not full and satisfactory, as it is the province of the jury to pass upon it. So if evidence has first been introduced tending to prove the agency or to make out a *prima facie* case thereof, the admissions and declarations of the alleged agent, if otherwise competent,

may then be shown, and the whole case be passed upon by the jury. (*South & North Ala. R. R. Co. v. Henlein,* 52 Ala. 606, 23 Am. Rep. 578; *Morrison v. Whiteside,* 17 Md. 452, 79 Am. Dec. 661; *National Mechanics' Bank v. National Bank,* 36 Md. 5; *York Co. Bank v. Stein,* 24 Md. 447; *Henderson v. Mayhew,* 2 Gill (Md.), 393, 41 Am. Dec. 434; *Central Pennsylvania Tel. & S. Co. v. Thompson,* 112 Pa. 118, 3 Atl. 439; Mechem on Agency, bottom page 76, sec. 106.)

It was quite apparent to the trial court that witness LaCoste was a hostile witness to the plaintiff, and the rule is that in such cases greater range is given in the examination of such witness by the person calling him than would otherwise be permitted. (C. S., sec. 8036.)

The court did not err in refusing to allow the witness Scheckel to explain to the jury the circumstances of entering into the agreement and the taking of the chattel mortgage. The agreement being in writing was the best evidence as to why it was taken, as well as the object and purpose thereof; there being no latent ambiguities therein calling for explanation by extraneous testimony, hence no explanation was either necessary or admissible. The same is true of the chattel mortgage. (*Davis-Calyx Drill Co. v. Mallory,* 137 Fed. 332, 69 L. R. A. 973.)

BUDGE, J.—The Bowers-Schweitzer Company, Ltd., a corporation, owned and operated the Golden Rule store of Rigby. On December 30, 1921, the company gave a chattel mortgage on its stock of goods, wares and merchandise, furniture and fixtures, to the Inter-Mountain Association of Credit Men, appellant herein, the mortgage providing that the company might continue to buy and sell merchandise in the usual course of retail trade, accounting to the association for the proceeds from the sale thereof, and such proceeds to be applied in reduction of the mortgage debt. On the same day the mortgage was executed the parties entered into what is termed an extension agreement whereby the association was to make an effort to obtain the consent of

the creditors of the company to an extension of time arrangement for the payment of their various claims against the company, for which the association was to receive a commission, and the company agreed, in the further conduct of its business, to make purchases from interested creditors and to pay cash therefor.

The Price Produce & Commission Company, respondent herein, was one of the creditors of the company, and some months after the execution of the mortgage and extension agreement, to wit, September 7, 1922, it signed and acknowledged an assignment of the amount of its then existing claim against the company to the association, for the purpose of collection, the association being authorized thereby to enforce payment by legal proceedings, in its own name or in any other manner it deemed proper, etc.

In February, 1922, one W. H. LaCoste was placed in the store at Rigby as manager and continued its business, including purchases of merchandise from respondent, and made payments thereon by cash and by check. The bank account of the store was kept in the name of the association and checks were signed "Inter-Mountain Asso. of Credit Men, by Wm. H. LaCoste, Manager," the notation "Bowers-Schweitzer Co., Ltd., General Merchandise, Wm. H. LaCoste, Manager," appearing across the checks.

In March, 1924, respondent filed its complaint in the district court, alleging that appellant association was indebted to it for goods sold and delivered subsequent to the time of the execution of the mortgage and extension agreement, the action being based upon the theory that during the period covering the transactions of respondent with the Golden Rule store for the amount herein claimed to be due, the business was operated by the appellant association through LaCoste as its agent. The contention of the association was, and is, that the business was at all times under the management and control of the Bowers-Schweitzer Company, and that LaCoste was the agent of the Bowers-Schweitzer Company in whatever dealings he had with respondent.

The case is here on an appeal by the association from a judgment for respondent based upon a verdict in its favor for the amount claimed. The assignments of error involve the admission and rejection of evidence, instructions given and refused, and the sufficiency of the evidence to sustain the verdict.

[1] Appellant complains of the refusal of the trial court to admit in evidence the minute-book of the Bowers-Schweitzer Company which, appellant claims, showed the employment of LaCoste by the Bowers-Schweitzer Company as its manager. In this we think the court erred, the pivotal question being whether or not in the purchase of the goods LaCoste was the agent of the Bowers-Schweitzer Company or the agent of appellant. This evidence was properly admissible as a circumstance to be considered in determining for whom LaCoste was acting as agent.

[2] It is also insisted that the court erred in refusing to allow the introduction of testimony to explain why the bank account of the Golden Rule store was carried in the name of the Inter-Mountain Association of Credit Men. This was also error, since the court had admitted, and, we think, properly, the bank statements and checks drawn in payment of indebtedness, incurred by the Golden Rule store, and appellant was entitled to have before the jury any and all transactions carried on by LaCoste that had a tendency to establish the fact of the agency of LaCoste and for whom he was acting at the time he purchased the goods the value of which was sought to be recovered by this action. It is difficult to perceive any sound reason for admitting the checks and bank statements in evidence and excluding evidence in explanation of the reason why the account was carried in the name of appellant association, since it would have a tendency to throw light upon the question directly involved, viz., for whom LaCoste was agent. The object and purpose of the introduction of the bank statements and checks was to establish the agency of LaCoste, and to effectuate such purpose all facts were admissible in evidence which had a tendency to throw any light upon the question

of the relationship that existed between appellant and La-
Coste or between LaCoste and the Bowers-Schweitzer Com-
pany.

[3] Appellant further complains of the action of the
trial court in permitting respondent, upon cross-examina-
tion, to propound to the witness LaCoste the following
question:

"Did you at that time and place say in the presence of
Mr. Price, Mr. Holden and myself, in answer to a question
as to who was operating and who you were working for in
the Golden Rule store say, 'I am running the store as man-
ager for the Intermountain Association of Credit Men'?"

Appellant insists that by asking LaCoste the above ques-
tion it was an attempt to impeach him. Whether it was
for this purpose or not, the fact remains that the court, in
instruction No. 15, advised the jury "that when the court
permitted certain questions (the above question, no doubt,
being among those referred to) to be asked of the witness
LaCoste regarding his alleged presence at the time of cer-
tain alleged conversations, at which it was further alleged
that other parties were present, such evidence was not ad-
mitted for the purpose of proving the agency of the said
LaCoste, but for the purpose of testing the credibilty of
the witness LaCoste. If, therefore, you believe that the wit-
ness LaCoste during this hearing testified falsely in regard
to any material matter, you are entitled to disregard his
testimony entirely unless corroborated by some other credible
witness or by other credible facts and testimony in the
case."

The asking of the question above quoted may not have
constituted prejudicial error, but the giving of the instruc-
tion quoted did constitute prejudicial error for the reason
that respondent made no attempt to prove that in the pres-
ence of Price, Holden and Mote, LaCoste made the state-
ment, "I am running the store as manager for the Inter-
Mountain Association of Credit Men." Price testified that
LaCoste made that statement, but LaCoste denied that he

43 Idaho—35

did, and the instruction, 'therefore, was not a fair one, and we cannot say that, in the absence of any competent evidence of impeachment, the instruction did not influence the jury in rendering the verdict. No doubt the question was asked for the purpose of impeaching LaCoste, but no impeaching testimony was offered, within the provisions of C. S., sec. 8036, and, as was said in *State v. Fowler*, 13 Ida. 317, 89 Pac. 757, the prosecutor was not justified in asking the questions he did in the form and manner he put them; that this was especially objectionable where such questions were asked and the persons not produced to whom it was claimed the statements were made, in order that they might testify in regard thereto; that where such questions are asked and the parties with whom the witness is claimed to have talked are not produced, the jury should be specifically instructed to disregard that evidence entirely. While it was permissible to be shown that the witness had made, at other times, statements inconsistent with his present testimony, such questions should not be asked merely for the purpose of leaving the impression with the jury that the witness had testified falsely, where no evidence is offered to establish the falsity of the testimony.

[4] C. S., sec. 8036, provides the method by which a party's own witness may be impeached, and should be substantially followed, which was not done in this case, and in our opinion the giving of the instruction objected to was not warranted, and was prejudicial error.

The sole issue in the case is one of agency, the proof of the existence or nonexistence of which frequently must be shown by circumstances. Accordingly a wide range may often be properly given to the evidence, provided that which is offered has a real probative tendency toward the main question in issue. The court should not have permitted the one party to introduce in evidence alleged declarations tending to establish agency on the one hand, in addition to documentary proof in support thereof, and restricted the party seeking to disprove the agency from showing facts having a tendency to refute the claim.

We deem it unnecessary to discuss numerous other errors assigned by appellant in view of the conclusion reached that, from a review of the entire record, the cause should be reversed and a new trial granted. It is so ordered. Costs awarded to appellant.

Wm. E. Lee., C. J., and Taylor and T. Bailey Lee, JJ., concur.

GIVENS, J., Dissenting.—The pivotal question is whether Mr. LaCoste in the purchasing of these goods was agent for the Inter-Mountain Association of Credit Men or the Bowers-Schweitzer Company.

By the clear terms of the chattel mortgage and extension agreement the court should have decided as a matter of law that the business was to be conducted and operated by the Bowers-Schweitzer Company. (*Marnella v. Froman,* 35 Ida. 21, 204 Pac. 202; C. S., sec. 6348; *Flores v. Stone,* 21 Cal. App. 105, 131 Pac. 349; *Ely v. Williams,* 6 Cal. App. 455, 92 Pac. 393; *Bank of Woodland v. Duncan,* 117 Cal. 412, 49 Pac. 414; 11 C. J., p. 551, sec. 247, notes 98, 99; 11 C. J., p. 399, sec. 1, note 3.) By reason of the assignment given by respondent which antedated the contracting of the indebtedness herein sued upon, the respondent was charged with notice, and, unless objection was made thereto, bound by the acts of the Inter-Mountain Association of Credit Men as its agent in the liquidation of the affairs of the Bowers-Schweitzer Company. (2 C. J., p. 859, sec. 543, and cases under note 78; *Seymour v. Oelrichs,* 156 Cal. 782, 134 Am. St. 154, 106 Pac. 88; *Corbit v. Kimball,* 107 Cal. 665, 40 Pac. 1029; *Shopbell v. Boyd,* 9 Cal. App. 236, 98 Pac. 59; *Curry v. King,* 6 Cal. App. 568, 92 Pac. 662.)

It is to be borne in mind that the Bowers-Schweitzer Company did not make an assignment for the benefit of creditors to appellant but that it gave security to appellant as trustees for the creditors to secure the indebtedness due its creditors. Under the terms of the chattel mortgage,

before the Inter-Mountain Association of Credit Men could have operated the business itself it would have had to acquire the, business. Unless, therefore, the Inter-Mountain Association of Credit Men had taken over this business it was not responsible for the debts of the Bowers-Schweitzer Company. The Bowers-Schweitzer Company being a corporation could only transfer its business to the Inter-Mountain Association of Credit Men by a proper corporate act, the record does not show that this was done. (14a C. J., sec. 2446, p. 531, sec. 2460, p. 541.) There was not sufficient evidence in view of the assignment of its 'claim by the respondent, and the agency in the Inter-Mountain Association of Credit Men thus created, to estop the Inter-Mountain Association of Credit Men from successfully asserting that the Bowers-Schweitzer Company and not the Inter-Mountain Association of Credit Men was the real debtor. Appellant had not taken over the business. The Price Produce and Commission Company, was, because of the assignment of its claim, charged with notice of the acts of its agent and also with notice of the legal status and relationship existing between the Inter-Mountain Association of Credit Men and the debtor and therefore charged with notice of the terms and conditions of the chattel mortgage and the extension agreement. The Inter-Mountain Association of Credit Men, as such, was not operating the Bowers-Schweitzer Company, even though it dictated who should be the manager for the purpose of attempting to liquidate the company's indebtedness. The judgment should be reversed and judgment entered for the Inter-Mountain Association of Credit Men.