THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME VINSON, Defendant-Appellant.

Third District    No. 79-473

Opinion filed November 6, 1980.

BARRY, J., dissenting.

John H. Reid and John F. Erbes, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (Martin N. Ashley and Christopher S. Carroll, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial the defendant Jerome Vinson was found guilty of armed robbery and he was sentenced by the circuit court of Peoria County to a term of 18 years in the penitentiary.

On December 22, 1978, Crazy Art's Trading Post was victimized by an armed robbery. On that evening, Arthur Kalb, his wife and daughter, and two customers, Albert Dixon and his girlfriend, Brenda Yates, were standing around the main counter of the store. Mrs. Kalb was behind that counter counting up an order for Dixon.

Suddenly, the door burst open. A black man armed with a shotgun rushed in. "This is a stickup," he yelled. "Hit the deck." He forced Arthur Kalb into the back room. He forced Kalb to lie down on one side of the doorway. Then, he ordered Brenda Yates to lie down on the other side. He compelled Mrs. Kalb to lie prone behind the jewelry counter. Then, he commanded her to open the cash box which she did and thereafter dumped the contents into a plastic bag together with Mr. Kalb's billfold.

The robber departed ordering the occupants of the store to stay quiet. The foregoing account is a summary of the incident, and of course the witnesses testified at greater length about what the robber did and about what they did.

After the robber left, a piece of Christmas wrapping paper was discovered on the floor. According to witness Bonnie Parrott, she saw the robber pull the paper off his shotgun. Fingerprints taken from the piece of paper were identified as those of the defendant. Roberta Kalb identified the defendant in open court as the robber.

The only assignment of error is the defendant's argument that reversible error occurred when the People laid the foundation for impeaching the testimony of Albert Dixon but failed to follow up such foundation by offering independent evidence of the alleged prior inconsistent statements.

Albert Dixon was initially called as a prosecution witness. During his testimony he indicated he was unable to identify the defendant as the robber and indicated he had not identified the defendant at the lineup. At this juncture, the prosecutor asked that Mr. Dixon be declared a hostile witness to allow him to be cross-examined. The People alleged that it was surprised in several respects by the testimony of Mr. Dixon and would possibly need to impeach him. The court allowed the People's request and designated Mr. Dixon as a hostile or court witness.

During this examination of Mr. Dixon, the following colloquy occurred:

"Question: Now, did you give a statement to Officer Cannon, an oral statement, regarding the robbery?

Answer: No, I didn't give nobody no statement.

Question: And isn't it true that you told him at that time that you recognized Jerome Vinson as the robber who perpetrated the armed robbery at the store at that time?

Answer: No, I didn't, because I didn't even know his name.

Question: Isn't it a fact that you told Officer Cannon that you didn't need to see the remaining people in the lineup because you knew that number 4 was the man who had robbed Crazy Art's Trading Post?

Answer: No, I didn't tell him that.

Question: And isn't it a fact that prior to the lineup Officer Cannon told you that you should write down the number of the person that you recognized as the robber at the Trading Post, and if you did not recognize him not to write any number down at all?

Answer: No that ain't exactly what we said in there.

Question: What was that?

Answer: Well, I told Officer Cannon that I didn't want to

identify nobody, even though Jerome, I didn't know his last name, looked kind of like the guy I had seen, but the man had on a mask and I didn't want to identify him if he didn't have on the mask.

Question: Then you wrote down number 4?

Answer: Well, I said he looked like the man.

Question: Lastly, calling your attention to last Monday, did you have occasion to be in the State's Attorney's office?

Answer: Yeah.

Question: Who was there?

Answer: You.

Question: Who else?

Answer: Crazy Art and his daughter, hisself.

Question: Now, his daughter being the young lady?

Answer: Yeah I guess. Another girl, and Brenda Yates.

Question: And did we talk about the case?

Answer: Yeah, we did.

Question: Did I ask you what happened?

Answer: Yeah you asked me what had happened.

Question: And isn't it a fact that you expressed no hesitation at that time about who the robber was in this case?

Answer: I told you—

Question: Isn't it a fact that at that time you expressed no hesitation about making an in-Court idenification?

Answer: I told you I might not be—identify the man because he had on a mask. This is what I told you, if you remember.

Question: I don't think I have any further questions."

■■ It is a well-settled rule that it is proper to impeach a witness by prior inconsistent statements once the proper foundation has been laid. It is equally established that if the witness denies making such a prior statement, it is incumbent upon the examiner to offer evidence of that statement. Generally, it is error to lay a foundation for impeachment and to fail to substantiate the implications made while laying that foundation. (*People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161; *People v. Kester* (1979), 78 Ill. App. 3d 902, 397 N.E.2d 888.) If however, the witness admits having made the prior statement, extrinsic evidence is not required. (*Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770.) Failure to complete the impeachment of an important witness may constitute reversible error and require a new trial. *People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38.

The trial court concluded Dixon had denied making the prior inconsistent statements referred to in the prosecution's examination but concluded the error was harmless, particularly in view of a curative instruction which will be referred to later. The People on this appeal insist

that evidence of a prior inconsistent statement, at least as related to the questions about the lineup, was unnecessary because the witness' response was equivocal, thus bringing it within the rule of *People v. Kester* (1979), 78 Ill. App. 3d 902, 397 N.E.2d 888. It should be noted at this juncture the People have responded only to that part of the questioning involving the lineup. No justification is urged for failure to introduce the prior inconsistent statements relating to those made to an officer at the scene or in the state's attorney's office. Such failure to respond indicates the People recognize that error did occur in the failure to introduce evidence of prior inconsistent statements relating to these questions.

■■ ■ The rule in this jurisdiction is that extrinsic evidence of a prior inconsistent statement after laying the foundation therefor is not required where the witness unequivocally admits having made the prior statement. (*Goldstein v. Hertz Corp.* (1973), 16 Ill. App. 3d 89, 305 N.E.2d 617; accord, *Logue v. Williams* (1969), 111 Ill. App. 2d 327, 250 N.E.2d 159.) The People argue that this rule has been extended to include equivocal answers, citing *People v. Kester* (1979), 78 Ill. App. 3d 902, 397 N.E.2d 888, but an examination of that case reveals that it did not involve prior inconsistent statements. Reviewing the testimony of Dixon regarding the statements he was alleged to have made at the lineup, we conclude the response to the several questions was consistent and indicated that he had made no such statements or identification during the lineup. Under these circumstances, the People, in order to have completed their efforts to impeach the witness, should have introduced extrinsic evidence of such statements, and failure to do so did constitute error.

This brings us then to the question of whether such errors were harmless or sufficiently and unfairly prejudicial so that a new trial is required. The defendant argues the errors were substantial and may have affected the jury's verdict because identification of the robber was the principal issue of the trial. On the other hand the People argue the effect of the errors was alleviated by the trial court's instruction, that the errors were of little significance, and that the other evidence was so overwhelming that the errors could not have affected the verdict of the jury.

After the presentment of evidence, the court made an oral instruction directing the jury to disregard certain testimony by Dixon, which it believed was required as a consequence of the People's failure to complete the impeachment of Dixon.

"However, at this time the Court is directing the jury to disregard in its entirety, certain testimony that was given in this trial yesterday by the witness Albert Dixon, and the testimony and questions and answers which you are to completely disregard are as follows: Mr. Holman asked Mr. Dixon whether or not at the scene of the robbery he had told Officer Cannon that he recog-

nized Jerome Vinson as the robber. Dixon answered that question as no. Mr. Holman asked witness Dixon at the line-up in question as to whether or not he hadn't told Cannon that he did not need to see any of the other persons in the line-up. He answered that question no. And then the last question asked by Mr. Holman was whether or not last Monday in the State's Attorney's Office Mr. Dixon told Mr. Holman he had no hesitancy about identifying the Defendant as the robber. He answered that question no.

All of those questions and those answers are to be completely disregarded by you in any consideration in this case. * * * "

By the questioning of Dixon, the People in effect asserted that Dixon had on three prior occasions to three different persons identified the defendant as the robber. The instruction attempts to reestablish the fairness of the proceeding, but as can be seen from the instruction it is not merely an order made during the course of a trial to disregard testimony which is ordered stricken (*People v. Strubberg* (1978), 61 Ill. App. 3d 521, 378 N.E.2d 191), but of necessity restates the information which should not be considered by the jury. Although the trial court did the best it could to obviate the unsupported and improper insinuations created by the questions, in view of the nature of the insinuations and their relation to the principle issue of the case the curative effect of such an instruction is minimal. In fact the insinuation created both by the questions and the instruction might well have more effect on the jury than the completion of the impeachment would have had.

■■ As indicated earlier there were five eye witnesses to the offense and each testified. Of these five witnesses including Dixon, only Mrs. Kalb identified the defendant as being the robber. Each of the others was unable to so identify the defendant even though their opportunities to observe the robber were similar to those of Mrs. Kalb. Apart from the in-court identification by Mrs. Kalb the only other evidence connecting the defendant to the crime was the wrapping paper which expert testimony indicated contained the defendant's fingerprints. The defendant testified in his own defense and with respect to the Christmas wrapping paper and his fingerprints thereon the defendant claimed he had handled a present earlier in the afternoon in Dixon's car. According to the defendant, Dixon had been in the store earlier in the afternoon to return the present. It should also be noted the defendant called Dixon as his own witness to corroborate his account of the wrapping paper. While the probative value of Dixon's testimony in corroborating the defendant's account is minimal, nevertheless it also may have been prejudicially affected by the incompleted impeachment attempted by the People in its case in chief. For error to be harmless the court of review should be convinced beyond a reasonable doubt the error complained of did not

contribute to the verdict. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) Where as in this case identification of the defendant is the principal issue, and there are unsupported innuendos or insinuations created by improper impeachment affecting identification testimony, we are unable to say beyond a reasonable doubt that such errors did not contribute to the verdict of the jury.

For the foregoing reasons the judgment of the circuit court of Peoria County is reversed and this cause is remanded for a new trial.

Reversed and remanded with directions.

STENGEL, J., concurs.

Mr. JUSTICE BARRY, dissenting:
I respectfully dissent from the opinion of the majority.

Though the People should have introduced extrinsic evidence of witness Dixon's statements he was alleged to have made at the lineup and otherwise, I do not believe that the failure of the State to do so constituted error, given the fact that the evidence of defendant Vinson's guilt is overwhelming.

A summary of the record testimony of the defendant and Dixon and Dixon's girl friend, Brenda Yates, was to the effect that they were all acquainted one with the other, that in fact Brenda Yates cooked a meal for the defendant and Dixon in Dixon's apartment on the afternoon of the event, and that the defendant and Dixon had been in the victim's store twice before on the afternoon before the event. However, in response to questions with regard to Dixon's alleged statements, Dixon testified "I didn't even know his name," "Jerome, I didn't know his last name," and "I might not be [able to] identify." In addition, it is unquestioned that the robbery occurred and that a piece of Christmas wrapping paper was discovered in the store, that was removed from the gun used. The defendant testified that he had handled Christmas wrapping paper while in Dixon's car earlier that afternoon, and it is not disputed that Christmas paper was *not* sold in the store.

As the majority points out, identification of the defendant was the determinative issue in this case. Given the above record testimony and the fact that the jury has every right to disbelieve witness Dixon and give him little or no credibility, I find no fault with the jury's finding. The jury had the benefit of weighing the in-court identification of witness Kalb, and it appears that the other eye-witnesses testified honestly to the effect that they could not be sure of the robber's identification because he was wearing a ski mask. It would appear that the principal issue of identification of the defendant has been properly decided by the jury.

I am convinced beyond a reasonable doubt that any error here was harmless, that any error did not contribute to the verdict of the jury, and that no reversible error occurred.

Being of the belief that there is overwhelming guilt and harmless error if any, and certainly evidence sufficient to sustain the conviction, I would affirm the trial court. See *People v. Panus* (1979), 76 Ill. 2d 263, 391 N.E.2d 376.