THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JANICE BIANCHI *et al.*, Defendants. (Cathy Sceniak, a/k/a Cathy Bianchi, Defendant-Appellant.)

Third District    No. 79-193

Opinion filed May 13, 1981.

114

George Troha and Theodore J. Bednarek, both of Troha, Troha & Bednarek, of Joliet, for appellants.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Following a jury trial in the Circuit Court of Will County, defendant Cathy Sceniak, a/k/a Cathy Bianchi, was convicted of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)). A co-defendant, Janice Bianchi, was acquitted. Cathy Bianchi was subsequently sentenced to the Department of Corrections for a term of 8 years. On appeal from the judgment entered on the jury verdict, defendant Cathy Bianchi raises three issues for our consideration: First, was she deprived of a fair trial as a result of the prosecutor's inflammatory and prejudicial rebuttal argument, and/or his failure to complete the impeachment of a defense witness; second, did the trial court err in not granting defendant's motion for substitution of judges; and finally, did the trial court err in refusing to allow the defendant to impeach the State's principal witness, Nancy Howard, with evidence that contrary to her own testimony, she remained a drug addict subsequent to defendant's arrest, and sold heroin within two months of defendant's trial.

It is not necessary to detail the facts of this case in order to resolve the various issues presented. The evidence introduced at trial established that on seven occasions from March 16, 1978, to April 23, 1978, Nancy Howard made both controlled and uncontrolled heroin purchases from the de-

fendant. At the time these purchases were made, Howard, who admitted previous heroin addiction, was a special employee of the Metropolitan Area Narcotics Squad (MANS). Tape recordings of telephone conversations between Howard and the defendant were admitted into evidence, as well as defendant's notebook which contained records of heroin credit transactions. The defendant did not deny making six heroin sales to Howard, but contended that she was entrapped and consequently absolved from all criminal liability. She also contended that the remaining heroin purchase was made by Howard from Joanne Harrison, a heroin addict who, at the time of the purchase, was living with the defendant. Joanne Harrison did not testify at the trial.

■■■ The first allegation of error made by the defendant is directed to the response of the assistant State's attorney to rebut defense counsel's comments on the State's failure to call Joanne Harrison as a rebuttal witness. In his closing argument, the defense counsel made the following statements:

> "Now, it's interesting to note that Joanne Harrison hasn't been called by the State on rebuttal evidence. The evidence is undisputed that Joanne Harrison sold an ounce of dope to Nan Howard. She sold some to Nan Howard. She didn't come to court to rebut that. I'm sure Joanne Harrison would say, no, I never sold her the ounce. Nan Howard did testify that Cathy sold her the dope on April 7th, but again, remember this; my client's guilt or innocence stands on the credibility of Nan Howard."

On rebuttal, the assistant State's attorney responded as follows:

> "He commented about Joanne Harrison not being called as a witness. Who was Joanne Harrison living with? Bianchis. Who has control of this witness? Bianchis. The reason I can't call her as a witness, assuming I can locate her, is because I can't vouch for credibility. The reason he can't call her as a witness is because she may slip up on the stand."

Defense counsel objected to these comments, but the court neither sustained nor overruled that objection.

On appeal, the defendant argues that in making the above-quoted response in rebuttal, the prosecutor drew grossly improper and prejudicial inferences from defendant's failure to call Joanne Harrison as a witness which deprived her of a fair trial. (See *People v. Bolton* (1976), 35 Ill. App. 3d 965, 343 N.E.2d 190). We disagree. The implication arising from the assistant State's attorney's comment as a whole is that the defendant was loath to have Ms. Harrison testify on her behalf because her testimony would ultimately prove to be unfavorable. "Generally, '[i]t is improper for a prosecutor to comment on a defendant's failure to call a witness where the comment suggests that the witness would have testified unfavorably to the defendant and the witness is as accessible to the State

as he would be to the defendant.' " (*People v. McElroy* (1980), 81 Ill. App. 3d 1067, 1073, 401 N.E.2d 1069, 1074, quoting *People v. Gamboa* (1975), 30 Ill. App. 3d 242, 250, 332 N.E.2d 543, 549.) Given the fact that Ms. Harrison had been living with the defendant, it is a reasonable and fair inference that she was more accessible to the defendant than to the State. (See *People v. Carr* (1969), 114 Ill. App. 2d 370, 262 N.E.2d 912.) Consequently, we do not consider the implication made by the prosecutor that the defense declined to make Ms. Harrison its witness because her testimony would be adverse to defendant's testimony to be improper. His remarks were generally in response to the defense counsel's query as to why the State had failed to call Ms. Harrison to testify, and were not beyond the scope of fair comment. *People v. Martinez* (1978), 62 Ill. App. 3d 7, 377 N.E.2d 1222.

■■ Although we find the assistant State's attorney's comments, taken in their entirety, not to be improper, we must express our disfavor with the prosecutor's statement that he could not call Ms. Harrison as a witness because he could not vouch for her credibility. In so stating, the prosecutor, albeit in a backhanded manner, placed the integrity of the State's attorney's office behind the credibility of its own witnesses. We have directed this very same State's attorney's office to refrain from making similar comments in the past because such statements are unfairly advantageous to the State and prejudicial to the defendant. (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217.) Unlike *Valdery*, where improper and prejudicial remarks by the prosecutor in closing argument were multitudinous, here this one comment is isolated and by itself does not warrant reversal. This fact, however, does not make the remark any less improper, and it is not to be condoned.

■■ The second comment made by the assistant State's attorney that the defendant contends was grossly prejudicial and highly improper also occurred during the prosecutor's closing argument:

> "You've heard enough from everybody in this case. My last comment about the evils in this case, about the—he said the sickness. Now, after listening to all the witnesses in this case, I know the real scope of the heroin problem in the Joliet area. Imagine, as you head the witnesses, addicts with seven hundred and fifty dollar a day habits, addicts that are unemployed, or sporadically employed. They, in turn, have to go out and commit other crimes to support their habits to buy the poison."

The defense counsel's objection to this comment was overruled.

On appeal, the defendant contends that these remarks were grossly prejudicial because there was no evidence in the record to support the prosecutor's statement that the witnesses who admitted heroin addiction (the defendant, Delia Moreno, Mark Pesavento, and Fred Kokaly) com-

mitted crimes to support their habits. On the contrary, there is direct evidence that both the defendant and Delia Moreno sold heroin, and the fact that Pesavento and Kokaly dealt in the narcotics trade to support their habits can be reasonably inferred from their testimony. We consequently reject the defendant's contention that the prosecutor's statement finds no basis in the evidence.

The final comments by the assistant State's attorney made during rebuttal that the defendant claims constitute reversible error were the following:

"MR. RONKOWSKI: They have to out and commit other crimes to support their addiction to buy the poison that is slowly killing them. This jury is in a unique position to do something about it higher up, we could do it in this pyramid direction of heroin, the chain of this direction of heroin as it comes into the country and is filtered down until it—eventually it goes down to the quarter bag in the street. The higher up we could go and cut that chain, the more we could do—the more we can stop addiction, the more we can stop further addiction, the more we can prevent in buying their first quarter bag.

This jury represents this community. You have an obligation to yourself, the community, and your children. Sure, our system has flaws, but right now, we're involved, and we can make this system work. What you do next in your verdict is going to affect your community and the drug traffic on the street."

The defendant takes the position that it was highly prejudicial for the prosecutor to request that the jury use its verdict to eliminate drug traffic in Joliet. We believe, however, that these remarks were within the bounds of fair comment. As the supreme court stated most recently in *People v. Jackson* (1981), 84 Ill. 2d 350, 360, "A prosecutor may properly comment unfavorably on the defendant and the violence of the crime, when supported by the evidence, and speak of the evil results of crime and the benefits of a fearless administration of the law."

Even if we were to consider these remarks not to be proper, however (see *People v. Harris* (1975), 33 Ill. App. 3d 600, 338 N.E.2d 129), our result would be the same. "An accused is guaranteed a fair trial, not one totally free from error. [Citation.] Thus, when the evidence adduced is so overwhelming that a conviction would, of necessity, result even if the error were eliminated, a court of review will not reverse the trial court's judgment." (*People v. Blackman* (1976), 44 Ill. App. 3d 137, 140-41, 358 N.E.2d 50, 53.) The evidence of guilt in the case at bar is truly overwhelming, and we cannot say as a matter of law that Ms. Bianchi would have been acquitted had the prosecutor's remarks been more restrained. Accordingly, the error, if any, was harmless.

Similarly harmless was the prosecutor's failure to follow up on an impeachment of Delia Moreno after laying a foundation for that impeachment. The following ensued on the cross-examination of Mrs. Moreno by the State:

"Q. Do you live close to Cathy Bianchi?

A. No, I don't.

Q. Have you ever been neighbors to Cathy Bianchi?

A. Never have.

Q. Do you remember telling me out in the hall just now that you were neighbors of Cathy Bianchi?

A. I didn't tell you that in the hall.

MR. FURLANE: Mr. Ronkowski, I know that wasn't true because I was standing right there.

THE COURT: Well, the question has been asked and answered, and the jury can weigh it.

MR. FURLANE: This is completely unprofessional.

THE COURT: Both gentlemen will not make any further statements of this kind. We will proceed with the proper questions of the witness.

Q. (By Ronkowski) Tell me now what is the closest you have ever lived to the Bianchis?

A. I never did tell you I lived close to her. I never told you I was her neighbor.

Q. Where do they live?

A. I don't know. Somewhere in the west."

■■ The State did not complete the impeachment of Ms. Moreno by introducing evidence of her prior inconsistent statement. In *People v. Vinson* (1980), 90 Ill. App. 3d 6, 9, the most recent Third District case on the subject, this court stated "[i]t is a well settled rule that it is proper to impeach a witness by prior inconsistent statements once the proper foundation has been laid. It is equally established that if the witness denies making such a prior statement, it is incumbent upon the examiner to offer evidence of that statement. Generally, it is error to lay a foundation for impeachment and to fail to substantiate the implications made while laying that foundation. * * *. Failure to complete the impeachment of an important witness *may* constitute reversible error and require a new trial." (Emphasis added.) In cases where the guilt is overwhelming, failure to complete an impeachment after laying a foundation is rendered harmless (*People v. Vinson*, Barry, J., dissenting). Such is the case here. We cannot see how the result of this case would be altered had the State followed through on its impeachment of Ms. Moreno.

The second issue raised by the defendant is whether the trial court erred in refusing to grant the defendant's motion for substitution of

judges. On September 6, 1978, the trial court denied defendant's pretrial motion to return money allegedly belonging to her that was seized by the police at the time of her arrest. During the hearing on this motion, the defendant stated entries made in a notebook (People's exhibit No. 1) seized during her arrest were "just scribblings" and records of money that she owed to certain individuals. In reality, these entries documented heroin credit transactions. In the course of denying the motion, the court stated:

> "I do want to comment to Mrs. Sceniak very briefly. I do not know how you think reasonable people look at reasonable evidence, and your explanations, if we can even call it that, as to entries of People's Exhibit Number 1, were ridiculous. Do you expect this Court to believe that you make entries in books and call them just 'marks on paper'? I don't know who you think you are dealing with.
>
> So, since I so firmly disbelieved your testimony in regard to explanations of People's Exhibit 1, I do not know why I should give you any credence to anything you have to say whatsoever."

These comments formed the basis of defendant's motion for substitution of judges pursuant to section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—5(c)).

■■ The burden of establishing actual prejudice for the purpose of obtaining a substitution of judges rests upon the defendant. The trial court need not justify retaining the case. Further, the trial judge is ordinarily in the best position to determine whether he has been prejudiced.[1] *People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867; *People v. Nickols* (1976), 41 Ill. App. 3d 974, 354 N.E.2d 474.

In denying the motion for substitution of judges, the court stated:

> "The Court's ruling in regard to the hearing on the motion, or petition for refund of monies was only in regard to the testimony in that particular hearing, and specifically aimed at the Defendant, Cathy Sceniak, in regard to certain explanations that she made in that hearing as to entries in People's Exhibit No. 1.
>
> As I sit here now, I believe, in the Defendants own mind they feel that the Court is prejudiced against them, but I can assure you that this Court is not. It would be the easy thing for this Court to do, but I do not think the lawful or right thing to do is to recuse itself and make a change of judges.
>
> My comments were directed only at the evidence as presented on that particular motion. I believe, the law is quite clear that if

---

[1] Effective September 26, 1979, Section 114—5(c) of the Criminal Code was amended to provide that the motion for substitution of judges is to be conducted by a judge not named in the motion, however.

part of the testimony of a witness cannot be believed, that it would be subject to none of it being believed in a particular hearing, and the Court was not in any way addressing itself to any further or future rulings or decisions that it might have to make in regard to these Defendants, whether it was based upon evidence presented, other than the Defendants' own testimony or from the Defendants' testimony themselves. If I were to allow a change or substitution of judges in this case, based upon the way this Court feels in his own mind, and knowing that its ruling was directed only at in that particular hearing, then any time, I think, you would be inviting a substitution of judges at almost any time of the proceedings in any trial, and, perhaps, a judge ruled on an objection or anything else.

So the motion for change of venue will be denied. This Court will not recuse itself from further proceedings in this matter."

It is obvious from the foregoing that the comments made by the court regarding the defendant's veracity were limited to her explanation of the notes appearing in the seized notebook. Further, the trial court stated quite unequivocally that it was not prejudiced against the defendant. We do not find any basis in the record to upset this finding.

Finally, the defendant contends that the trial court committed reversible error in not allowing her to impeach Nancy Howard with evidence that she used and sold heroin subsequent to the defendant's arrest. This evidence, in the form of testimony of Delia Moreno, Mark Pesavento and Cathryn Ervin, would contradict Ms. Howard's testimony that she never sold heroin and had ceased being an addict on April 23, 1978. Although the refusal of the trial court to admit this impeachment evidence may have been erroneous (see *People v. Lurry* (1979), 77 Ill. App. 3d 108, 395 N.E.2d 1234), again we hold that given the overwhelming evidence of defendant's guilt any such error must be considered harmless.

For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

Affirmed.

ALLOY and HEIPLE, JJ., concur.