730 P.2d 1089

**Dale A. PREUSS, Sr., and Sandra Preuss, husband and wife, Plaintiffs-Appellants,**

v.

**Jeffrey THOMSON and Francescita Thomson, husband and wife, Defendants-Respondents.**

No. 15986.

Court of Appeals of Idaho.

Dec. 31, 1986.

Allen V. Bowles, Moscow, for plaintiffs-appellants.

Kent J. Merica, Knowlton and Miles, Lewiston, for defendants-respondents.

BURNETT, Judge.

This is an automobile accident case. The appeal comes to us from a judgment entered upon a jury verdict in favor of the defendants, Jeffrey and Francescita Thomson. The plaintiffs, Sandra and Dale Preuss, present three issues on appeal. (1) Should the trial judge have instructed the jury to disregard "insinuations" made by defense counsel while cross-examining the Preusses? (2) Should a new trial have been ordered upon the ground that the verdict was unsupported by the evidence? (3) Did the trial judge err in failing to submit a special verdict form to the jury? For reasons set forth below, we answer each question in the negative and we decline to overturn the judgment.

The facts surrounding the automobile accident are undisputed. Vehicles occupied by the Preusses and the Thomsons, respectively, were stopped in a line of traffic behind a stop sign. Mr. Thomson inadvertently took his foot off the brake pedal and his car rolled forward approximately five feet into the rear of the Preuss vehicle. Testimony at trial indicated that the impact occurred at "walking speed." The Preuss vehicle suffered slight damage. After the accident, Mr. and Mrs. Preuss both complained of numerous ailments. They sought extensive medical and psychological treatment. A claim for property damage to the Preuss vehicle was settled. The issue of personal injury went to trial.

I

We first examine the contention that the Thomsons' attorney improperly cross-examined the Preusses with regard to statements they allegedly had made to their psychologist. Counsel asked about statements to the effect that Mrs. Preuss had experienced psychosomatic symptoms, that many of the ailments had existed prior to the accident, and that Mrs. Preuss had a tendency to exaggerate her condition. The Preusses argue that counsel's questioning technique amounted to "impeachment by insinuation" because he laid the foundation for several items of impeaching testimony but then failed to call the psychologist to prove the impeachment. They contend that the trial court should have instructed the jury to disregard any testimony elicited by such cross-examination. The Preusses requested such an instruction at the close of the evidence, but their request was denied.[1]

When this case was tried, impeachment by use of prior inconsistent statements was governed by former I.R.C.P. 43(b)(8).[2] The rule then provided as follows:

A witness may ... be impeached by evidence, that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so [be] allowed to explain them....

Here, counsel laid a proper foundation for introduction of the impeaching statements.

1. The Preusses' counsel made no objection during the cross-examination. Indeed, the Preusses' position on the matter was not communicated to the court until the end of the trial, when the judge was preparing to instruct the jury. The Preusses now claim that they deferred their objection and their request for a cautionary instruction because they wanted to see whether the Thomsons would call the psychologist to testify. Although we cannot say that this objection was untimely as a matter of law, *see State v. Flitton*, 52 Idaho 374, 15 P.2d 397 (1932), we do believe that the Preusses should have objected more promptly. A timely objection would

have furnished an occasion for the trial judge to control the course of the cross-examination and to determine whether defense counsel intended to "follow up" by proving the impeachment. As events unfolded in this case, the objection did not come until two days after the allegedly improper cross-examination had occurred.

2. This rule since has been superseded by I.R.E. 613. Under the particular facts of this case, the rule change alters neither our reasoning nor our conclusion.

He presented the circumstances surrounding each statement and he gave the witness an opportunity to explain or deny it. In response to counsel's questions, the Preusses usually said that they could not remember making the prior statements.

Testimony by a witness that he or she cannot remember is sufficient to complete the foundation for impeachment with a prior inconsistent statement. *Transamerica Insurance Co. v. Pueblo Gas and Fuel Co.*, 33 Colo.App. 92, 519 P.2d 1201 (1973). A witness's declaration that he cannot remember making the purported statement is equivalent to a denial. *Id.* Thus, in this case, a proper foundation was laid for impeaching evidence. Defense counsel could have called the psychologist for the purpose of completing his attack upon the Preusses' credibility.[3] However, counsel did not take this final step.

■ In general, when a foundation for impeachment has been laid, it should be followed by proof unless the prior statement has been admitted by the witness. Otherwise, a cross-examiner might impugn a witness's credibility by innuendo unsupported by evidence that the prior inconsistent statements actually were made. Nevertheless, the fact that unfinished impeachment is a disfavored practice does not mean that it is always reversible error.

The jurisdiction most critical of this practice may be Illinois. Unfinished impeachment in that state is strictly condemned as error; but reversal does not invariably follow. *See People v. Bianchi*, 96 Ill.App.3d 113, 51 Ill.Dec. 629, 420 N.E.2d 1187 (1981) (harmless error under the facts presented); *People v. Vinson*, 90 Ill.App.3d 6, 45 Ill. Dec. 480, 412 N.E.2d 1062 (1980) (prejudicial error under the facts of the case); *Townsend v. Chicago Transit Authority*, 1 Ill.App.2d 77, 116 N.E.2d 170 (1953); *Gordon v. Checker Taxi Co.*, 334 Ill.App. 313, 79 N.E.2d 632 (1948) (practice constitutes prejudicial misconduct under the facts of the case); *but see Williams v. Yellow Cab Co.*, 11 Ill.App.2d 112, 136 N.E.2d 582 (1956) (failure to complete impeachment was not prejudicial).

■ Likewise, in Idaho, the impact of this practice has been examined case-by-case. *See State v. Boyatt*, 59 Idaho 771, 87 P.2d 992 (1939); *Price P & C Co. v. Inter-Mountain Ass'n*, 43 Idaho 540, 253 P. 854 (1927); *State v. Fowler*, 13 Idaho 317, 89 P. 757 (1907). The cases where error has been deemed reversible are factually distinguishable from the present case. They involve egregious conduct by a cross-examiner, usually in a criminal case, who creates prejudice by alluding to prior statements with absolutely no basis in fact for the allusions.[4] These cases are akin to those in Illinois where error has been held reversible.[5] The seminal concern about incomplete impeachment appears not to be with the procedure *per se*, but with the underlying misconduct of lawyers who seek to prejudice juries by making factually unsupported allegations. *State v. Hines*, 130

---

**3.** By characterizing the psychologist's potential testimony as proof of impeachment, we do not intimate that it could have been used only for that purpose. His testimony concerning statements by the Preusses might also have been admissible to show party admissions. *See* I.R.E. 801(d)(2).

**4.** In *State v. Boyatt, supra,* the defendant in a murder trial was asked whether he had not told sheriff's officers that he had fired four or five gunshots at the deceased. In *State v. Irwin,* 9 Idaho 35, 71 P. 608 (1903), a prosecutor in a rape case asked the son of the accused, on cross-examination, whether he had not stated that he suspected his father of having committed a similar offense with other girls and that such conduct had caused the death of the wit-

ness's mother. In neither case did the record disclose any reason to believe that the statement actually was made.

**5.** In *State v. Vinson, supra,* a robbery case where the identity of the defendant was the key issue, the prosecuting attorney attempted to impeach a witness who claimed that he was unable to identify the defendant as the robber. The prosecutor alluded to three alleged prior statements where the witness supposedly identified the defendant. This was held reversible error. In an auto accident case, it was likewise held reversible error for counsel to ask an adverse witness if he had not stated, at the scene of the accident, that it looked like the accident had been framed. *Gordon v. Checker Taxi Co., supra.*

Ariz. 68, 633 P.2d 1384 (1981). Where counsel has a genuine factual basis for questioning a witness about a prior inconsistent statement, and the witness testifies to a lack of recollection, it is not error if counsel later omits to prove the statement by extrinsic evidence. *Id. See also Pedersen v. State*, 420 P.2d 327 (Alaska 1966) (applying a statute equivalent to I.R.C.P. 43(b)(8)).

In the present case we cannot say that defense counsel acted in bad faith. There is no indication that the questions were asked without a factual basis. The source of information was the Preusses' own psychologist, who had been authorized to talk to the Thomsons' counsel. The Preusses could have called the psychologist as their own witness to correct any misrepresentations of their prior statements to him. They did not do so. Under these circumstances we find no taint to the fundamental fairness of the trial, and we find no error in the trial court's refusal to give a cautionary instruction.

## II

The Preusses next contend that the district judge should have ordered a new trial, pursuant to I.R.C.P. 59(a)(6), because the evidence was insufficient to support the verdict. In a related subissue, the Preusses assert that the jury impermissibly disregarded uncontroverted testimony of their treating physician, Dr. William Marineau. We deal first with the subissue.

■ It is true that triers of fact may not disregard the positive, uncontradicted testimony of a credible witness unless the substance of the testimony is inherently improbable. *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979). However, it is also true that triers of fact may determine the weight to give opinion testimony by an expert witness, so long as they do not act arbitrarily. *Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982); *Simpson v. Johnson*, 100 Idaho 357, 597 P.2d 600 (1979). In any event, the record in this case simply does not support the Preusses' assertion that Dr. Marineau's testimony was uncontro-

verted. Dr. Marineau opined that the accident had produced extensive, prolonged muscle and soft-tissue injuries. The Thomsons introduced the testimony of two experts, an orthopedic surgeon and a psychiatrist, who disagreed with Dr. Marineau's diagnosis. In addition, the jury reasonably could have found that the circumstances surrounding the accident were inconsistent with Dr. Marineau's opinion. The jury, faced with conflicting evidence and available inferences, elected not to accept the opinion of Dr. Marineau. We find nothing arbitrary in their choice.

■ We now turn to the sufficiency of the evidence itself. Mr. Thomson's negligence was uncontested. But it remained for the Preusses to establish their injuries and to prove that the injuries were proximately caused by such negligence. *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983); *Johnson v. Emerson*, 103 Idaho 350, 647 P.2d 806 (Ct.App.1982). The jury heard testimony from the driver of a truck into which the Preusses' car had been pushed by the Thomson vehicle. He stated that the impact was so slight that he was not even sure a collision had occurred. An auto body expert testified about the minor nature of damage to the Preusses' car. There was no damage whatever to the Thomsons' automobile. In addition, the jury heard testimony from various experts that both plaintiffs had suffered from mental and physical maladies prior to the accident. Based on this evidence, it was permissible for the jury to find that the injuries claimed were not proximately caused by the accident. We will not disturb that finding.

We likewise conclude that the trial court did not err in denying the Preusses' motion for a new trial. A judge's ruling on a motion for new trial will not be overturned absent an abuse of discretion. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986); *Sheets v. Agro-West, Inc.*, 104 Idaho 880, 664 P.2d 787 (Ct.App.1983). We find no such abuse in this case.

### III

 Finally, we turn to the assertion that the district judge should have submitted the jury a special verdict form. The Preusses requested that such an interrogatory form be used, but the request was denied. Instead, the court submitted general verdict forms simply identifying the prevailing party and fixing the amount of damages awarded, if any.

The Preusses now argue that failure to use the special verdict form was prejudicial error because it prevented the losing party from determining the basis for the jury's verdict. The special verdict form would have required the jury to state separately their findings on the issues of comparative negligence and proximate cause. The general verdict form was silent on these points.

We believe that an interrogatory verdict is a salutary means of structuring the fact-finding process in jury trials and of facilitating meaningful review of jury-made findings. We strongly encourage its use. Nevertheless, our Supreme Court has held that submission of special interrogatories is entirely within the discretion of the trial judge. *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971). The judge may refuse to submit interrogatories in a case where the factual issues are not complex, particularly where the subjects of the special interrogatories have been properly covered by the jury instructions. *Id.*

The Preusses argue that I.C. § 6–802 overrides *Taylor* and requires the use of special verdict forms upon request. The statute is part of Idaho's comparative negligence scheme. Its purpose is to assure that damages and the negligence of each party will be quantified so that any award can be adjusted accordingly. That purpose has no application here. As stated above, the sole issue at trial was whether Mr. Thomson's uncontested negligence proximately caused the Preusses' alleged injuries. Issues material to the comparative negligence scheme were not raised at trial.

Accordingly, we hold that the trial judge's discretion in this instance was not displaced by a statutory duty to use a special interrogatory verdict form. The Preusses have not complained that the jury otherwise received inadequate instructions on the points that would have been covered by the interrogatories. Neither do they persuasively argue that the jury's verdict was difficult to interpret. Because negligence was undisputed, the jury's refusal to award damages could mean only that the jury found no proximate relation between any alleged injuries and the accident. We find no error.

The judgment entered upon the jury verdict is affirmed. Costs to the respondents. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.