# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43790

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | Boise, June 2017 Term |
| Plaintiff-Respondent, | ) | |
| | ) | 2017 Opinion No. 101 |
| v. | ) | |
| | ) | Filed: September 20, 2017 |
| JONATHAN EARL FOLK, | ) | |
| | ) | Karel A. Lehrman, Clerk |
| Defendant-Appellant | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Gregory W. Moeller, District Judge.

The judgment of the district court is affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant. Maya P. Waldron argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

HORTON, Justice.

Jonathan Earl Folk appeals from his judgment of conviction for one felony count of sexual abuse of a child under sixteen years old entered after a jury trial in Bonneville County. On appeal, Folk contends that the district court made numerous evidentiary errors. Folk also argues that the district court erred by denying his motion for a judgment of acquittal and the prosecutor committed misconduct amounting to fundamental error in his closing argument. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We described the circumstances giving rise to this prosecution in *State v. Folk*, 151 Idaho 327, 256 P.3d 735 (2011) (*Folk I*):

> On December 25, 2007, at about 5:30 p.m., the mother of three minor children (Mother) arrived home after running an errand and went into the kitchen to help her grandmother finish preparing Christmas dinner. As she was walking to the kitchen, Jonathan Folk (Defendant) was in the living room. He had come over to pick up a house guest. After about ten to fifteen minutes, Mother walked into the living room and asked her husband where their five-year-old son (Child) was.

1

He said that he thought Child was in his bedroom. Mother walked to Child's room, and as she was nearing the open door to the room she heard Child say, "That's gross." As she walked into the room, she saw Child lying on his back on the bed and Defendant kneeling down in front of Child with Child's legs around Defendant and his hands on Child's hips. The bed was a small child's bed, about ten inches off the floor. Mother asked what they were doing, and both Child and Defendant said they were just playing. Both Defendant and Child were fully clothed, and it did not appear that either of them had just pulled or zipped their pants up. Mother did not see any signs of any type of sexual act by Defendant. Defendant stood up and walked out of Child's room, and then returned and sat on the floor while Child picked up his toys pursuant to Mother's instructions. Defendant and the guest left about one and one-half hours later. At about 4:00 a.m. that night, Child awakened Mother and stated that he had just had a nightmare. Mother asked what it was about, and Child responded that it was about what that guy did to Child last night. Mother asked what guy, but Child would not answer. Later that morning, Mother telephoned the police and then asked Child what had happened last night. Child answered that Defendant had placed his mouth on Child's penis.

*Id*. at 331, 256 P.3d at 739.

The State charged Folk with lewd conduct by oral-genital contact with Child. A jury found Folk guilty of lewd conduct and the district court sentenced him to life in prison without parole. Folk appealed. In *Folk I*, we vacated Folk's judgment, holding: (1) Folk's right to confrontation was violated; (2) Folk's right to self-representation was infringed; and (3) there were errors in the jury instructions which would have permitted the jury to convict Folk for uncharged conduct or conduct that did not constitute lewd conduct. *Id*. at 342, 256 P.3d at 750. Following a second jury trial, Folk once again appealed from a fixed life sentence. *State v. Folk*, 157 Idaho 869, 873, 341 P.3d 586, 590 (Ct. App. 2014) (*Folk II*). The Court of Appeals vacated Folk's judgment because evidence of Folk's prior convictions was improperly admitted. *Id*. at 880, 341 P.3d at 597.

Following remand, the State made a curious charging decision. It amended the charge from lewd conduct to sexual abuse of a child under the age of sixteen, alleging that Folk committed the crime "by tickling the stomach and/or feet of [Child] and/or touching the hips of [Child] with his hands." The State also added a persistent violator allegation. Folk filed a number of pretrial motions, including a motion to exclude the testimony of Blaine Blair that Folk had told him that Folk desired to sexually abuse children. The district court issued two memorandum decisions on Folk's motions and ultimately permitted Blair to testify regarding Folk's statement by way of a narrow set of leading questions:

Q [by the prosecutor]: All right. I'm going to ask you some questions, and I just want you to answer yes or no to these questions. Okay? Can you do that?

A: Yes, I can.

Q: Did you and [Folk] ever discuss things? Yes or no?

A: Yes.

Q: Okay. Did you and [Folk] ever share secrets with one another? Yes or no?

A: Yes.

Q: Now again this is yes or no. Did the defendant, [Folk], ever say anything to you indicating that he desired to sexually abuse children? Yes or no?

A: Yes.

Q: Okay. How many times did he express that to you?

A: Just once.

After the State amended the charge to sexual abuse of a child, Folk moved to exclude evidence of the alleged oral-genital contact. The district court denied Folk's request.

On several occasions during the trial, Folk unsuccessfully attempted to admit evidence of Child's testimony from the earlier trials. On some occasions, he did so to refresh Child's memory, and on other occasions, he sought to introduce the prior testimony to impeach Child with prior inconsistent statements. The district court's evidentiary rulings on these efforts are one of the subjects of this appeal.

Folk was found guilty of sexual abuse of a child under sixteen, a violation of Idaho Code section 18-1506(1)(b). The district court dismissed the persistent violator enhancement and imposed a fixed sentence of 25 years. Folk timely appealed.

## II. STANDARD OF REVIEW

"The trial court has broad discretion in the admission and exclusion of evidence and its decision to admit evidence will be reversed only when there has been a clear abuse of that discretion." *State v. Lopez-Orozco*, 159 Idaho 375, 377, 360 P.3d 1056, 1058 (2015) (quoting *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005)).

> A three point inquiry is used to determine whether a trial court has abused its discretion: (1) whether the court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*State v. Joy*, 155 Idaho 1, 6, 304 P.3d 276, 281 (2013) (quoting *State v. Pepcorn*, 152 Idaho 678, 686, 273 P.3d 1271, 1279 (2012)). "[W]hether evidence is relevant is a question of law this Court reviews *de novo*." *Id.*

## III. ANALYSIS

### A. The district court did not abuse its discretion by admitting Blair's testimony.

Folk argues that Blair's testimony was not relevant to any issue of material fact in the case and, even if it were relevant, the probative value of the evidence was substantially outweighed by the risk of unfair prejudice.

#### 1. Blair's testimony was relevant to the issue of intent.

In its second memorandum decision, the district court concluded that Blair's testimony "appears to be highly relevant to the issues of motive, intent, or absence of mistake or accident" and "is probative of Folk's state of mind and gives an explanation as to why he would place himself alone with a child or touch a child." Folk argues that a "desire to sexually abuse children generally doesn't show that otherwise-innocent tickling was done to gratify Mr. Folk's sexual desires."

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. The question before the jury was whether Folk's conduct in tickling Child and/or touching Child on the hips was done with the intent to gratify Folk's sexual desires. We agree with the district court's conclusion that Blair's testimony that Folk indicated that he desired to sexually abuse children had a tendency to make it more likely Folk's admitted contact with Child was not innocent but was rather done for the purpose of gratifying Folk's sexual desires. Therefore, we find no error in the district court's conclusion that Blair's testimony was relevant.

#### 2. The district court did not abuse its discretion when it determined that the probative value of Blair's testimony was not outweighed by the danger of unfair prejudice.

Folk argues that Blair's testimony has extremely low probative value due to Blair's "disastrous" memory and the district court increased the level of unfair prejudice by allowing the State to use leading questions to elicit Blair's testimony. "[W]e review the district court's determination of whether the probative value of the evidence outweighs its prejudicial effect for

4

an abuse of discretion." *State v. Kralovec*, 161 Idaho 569, 574, 388 P.3d 583, 588 (2017) (quoting *State v. Ehrlick*, 158 Idaho 900, 907, 354 P.3d 462, 469 (2015)).

In its first memorandum decision, the district court concluded that "[i]f offered for rebuttal purposes, the probative value of [Blair's testimony] is not substantially outweighed by the danger of unfair prejudice." The district court reasoned that Blair's testimony was "highly probative in a case where the intent of the contact is a significant part of the charged crime, especially given Folk's anticipated defense that he was merely engaged in harmless horseplay with the victim." However, the district court recognized that there was a "substantial risk that the jury would treat such testimony as propensity evidence." The district court held that evidence of Folk's statements to Blair would be conditionally admissible if offered to rebut assertions that the touching was the result of an accident, mistake, or done of some other purpose." In its second memorandum decision, the district court again concluded that Blair's testimony was "highly relevant to the issues of motive, intent, or absence of mistake or accident." At trial, Folk objected to the State's proposed question based on Idaho Rule of Evidence 404(b).

Idaho Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

I.R.E. 404(b). The district court's analysis of Blair's testimony shows that the district court recognized the issue as one of discretion, that the district court acted within the bounds of its discretion, and that the district court reached its decision through an exercise of reason. Specifically, the district court recognized and applied this Court's two-tiered analysis in *State v. Grist*:

> Admissibility of evidence of other crimes, wrongs, or acts when offered for a permitted purpose is subject to a two-tiered analysis. First, the trial court must determine whether there is sufficient evidence to establish the other crime or wrong as fact. The trial court must also determine whether the fact of another crime or wrong, if established, would be relevant. Evidence of uncharged misconduct must be relevant to a material and disputed issue concerning the crime charged, other than propensity. Such evidence is only relevant if the jury can reasonably conclude that the act occurred and that the defendant was the actor.
>
> Second, the trial court must engage in a balancing under I.R.E. 403 and determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. This balancing is committed to the discretion of

the trial judge. The trial court must determine each of these considerations of admissibility on a case-by-case basis.

*State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009) (internal citations omitted). Once the district court reached the Rule 403 analysis, it determined that the danger of unfair prejudice in Blair's testimony would arise from reference to Folk's past abuse of children. By requiring the State to question Blair only about Folk's statement of intent to sexually abuse children in the future, the district court eliminated the danger that the jury might consider past conduct as evidence of Folk's propensity to abuse children. We find that Blair's testimony was prejudicial to Folk, but not unfairly so.

"Rule 403 does not require the exclusion of prejudicial evidence. Most evidence offered to prove a defendant's guilt is inherently prejudicial. The rule only applies to evidence that is unfairly prejudicial because it tends to suggest that the jury should base its decision on an improper basis." *State v. Rawlings*, 159 Idaho 498, 506, 363 P.3d 339, 347 (2015) (internal citations omitted). The district court properly acted to prevent the introduction of testimony from Blair that might have led the jury to base its decision on an improper basis. We hold that the district court did not abuse its discretion when it admitted Blair's testimony.

**B. The district court did not abuse its discretion when it admitted testimony concerning the alleged oral-genital contact as evidence of Folk's intent.**

In its second memorandum decision, the district court held that testimony concerning the alleged oral-genital contact with Child was admissible as evidence of Folk's intent to gratify his sexual desires under Idaho Rule of Evidence 404(b) and that it was not unfairly prejudicial under Idaho Rule of Evidence 403. The district court reasoned that a finding of criminal intent may be based upon circumstantial evidence and that testimony concerning the alleged oral-genital contact was relevant to the determination whether Folk touched and tickled Child with the intent to gratify his sexual desires. In its Rule 403 analysis, the district court stated:

> Here, the evidence is certainly prejudicial, but the Court does not believe it is unfairly prejudic[ial]. Because of the contemporary nature of the acts involved, it is directly related to the charged conduct. This would be different if the alleged oral to genital contact occurred at some earlier or later date. The State has elected to charge Folk with sexual abuse, not lewd conduct. The Court does not conclude that this strategy lessens the relevancy of the alleged victim's testimony about the entirety of the incident.

The district court concluded that allowing the jury to know exactly what happened at the time of the alleged incident would not result in unfair prejudice to Folk.

6

Folk argues that the evidence of the alleged oral-genital contact was not relevant to any issue in the case including Folk's intent. Folk contends that evidence of the alleged oral-genital contact was not necessary to provide the jury with the complete story and cites to this Court's opinion in *State v. Kralovec* where this Court "decline[d] to perpetuate the use of the *res gestae* doctrine in Idaho," concluding that "evidence previously considered admissible as *res gestae* is only admissible if it meets the criteria established by the Idaho Rules of Evidence." *Kralovec*, 161 Idaho at 573–74, 388 P.3d at 587–88. Finally, Folk argues that the evidence was so confusing, misleading, and unfairly prejudicial that it suggested a decision on an improper basis.

We hold that the district court did not abuse its discretion by admitting the evidence of the alleged oral-genital contact. First, as discussed above, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. "Specific intent may, and ordinarily must, be proved by circumstantial evidence. . . . One's intent may be proved by his acts and conduct, and such is the usual and customary mode of proving intent." *State v. Oldham*, 92 Idaho 124, 132, 438 P.2d 275, 283 (1968) (internal citations and quotations omitted); *State v. Cheatham*, 134 Idaho 565, 572, 6 P.3d 815, 822 (2000).

Folk's assertion that the district court improperly used the doctrine of *res gestae* to admit the evidence is incorrect. We first observe that the district court did not have the benefit of our decision in *Kralovec* at the time it made its decision, as we released *Kralovec* nearly a year and a half after the district court's decision. The district court's discussion of *res gestae* came in the context of its discussion of the Court of Appeals' decision in *State v. Blackstead*, 126 Idaho 14, 878 P.2d 188 (Ct. App. 1994). Nevertheless, the district court's analysis concluded: "Regardless of what we call such evidence, the Court concludes that it is admissible under Rules 403 and 404(b)." Thus, the district court's decision was consistent with our holding in *Kralovec*, as the district court made its decision based upon the "criteria established by the Idaho Rules of Evidence." *Kralovec*, 161 Idaho at 574, 388 P.3d at 588.

Finally, we are unable to accept Folk's argument that the evidence was so confusing, misleading, and unfairly prejudicial that it suggested that the jury should reach its decision on an improper basis. Folk does not attempt to show that the district court abused its discretion by admitting the evidence under an erroneous Rule 403 analysis. The district court instructed the jury that Folk could only be convicted for the act of tickling Child or touching his hips. "We

7

must presume that the jury followed the jury instructions in arriving at their verdict." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 335, 233 P.3d 1221, 1257 (2010). We hold that Folk has not shown that the district court abused its discretion by admitting the evidence of the alleged oral-genital contact.

## C. The district court did not abuse its discretion when it excluded evidence of Child's prior testimony.

Folk argues that the district court erroneously excluded Child's prior sworn testimony. Folk contends that the prior testimony was admissible for substantive purposes under Idaho Rule of Evidence 801(d)(1)(A) and for impeachment purposes under Idaho Rule of Evidence 613(b). We address these arguments in turn.

### 1. Folk's argument based on Rule 801(d)(1)(A) was not preserved for appeal.

Folk argues that Child's prior testimony was admissible non-hearsay pursuant to Rule 801(d)(1)(A). However, Folk fails to point to any place in the record where the evidence was presented to the district court as admissible non-hearsay evidence under Rule 801. "This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Morrison v. St. Luke's Reg'l Med. Ctr., Ltd.*, 160 Idaho 599, 608, 377 P.3d 1062, 1071 (2016) (quoting *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368, 179 P.3d 323, 331 (2008)). At best, Folk points to this exchange at trial:

> [FOLK'S STANDBY COUNSEL]: Your Honor, maybe we should just publish the testimony of his previous – the transcript of his previous testimony, since the witness doesn't remember anything.
>
> THE COURT: Well, again, there's no need to publish it if he doesn't deny it. I think the mode of impeachment is you just ask him about it. Right? Certainly, though, if it's under oath, it could be extrinsic evidence, if he's denying it. But I don't think he's denying it. If he denies that he made the statement, then extrinsic evidence is admissible. If he doesn't deny it, then impeachment is complete.
> And I'm just basically quoting Rule 613.

Based on the district court's statements and surrounding context of the transcript, it is clear that the evidentiary basis upon which Folk sought to introduce the prior testimony was Idaho Rule of Evidence 613. As neither Folk nor his standby counsel advanced Rule 801 as a basis for introducing the testimony as admissible non-hearsay, we hold that the issue was not preserved for appeal.

**2. The district court did not abuse its discretion by excluding Child's prior testimony pursuant to Idaho Rule of Evidence 613(b).**

Folk argues the district court abused its discretion when it did not allow Folk to introduce extrinsic evidence of Child's prior testimony when Child stated that he did not remember having previously testified as to a number of subjects. In support of his argument, Folk cites to broad swaths of the trial transcript:

> The district court erred by not allowing Mr. Folk to introduce extrinsic evidence of [Child's] prior sworn testimony when [Child] stated, over and over again, that he did not remember issues to which he had previously testified. (*See generally* Tr. Vol. I, p. 439, L.2–p.445, L.21, p.463, L.22–p.488, L.13, p.495, L.1–p.516, L.20.) The district court repeatedly told Mr. Folk it would only let him introduce [Child's] prior sworn testimony if [Child] *denied* making a statement he had previously made, but that he could not introduce prior sworn testimony if [Child] merely said he did not remember whether he made the statement. (Tr. Vol. I, p.433, L.19–p.434, L.4 ("You're asking him if he remembers . . . . Essentially we need to know whether [reading the transcript] would cause him to change his answer . . . And if not, then you need to go on and ask a different question in a different way."), p.451, L.25–p.452, L.5 ("[H]e's being asked if this would refresh his recollection. Generally he's been saying sometimes that it does, sometimes that it doesn't. And that's different than impeaching with prior inconsistent testimony. And not remembering isn't necessarily inconsistent."), p.467, Ls.21–25 ("If he says he doesn't remember, that's not the same as denying it. If he looked at it and said, yeah, I may have said that in the first trial but I don't remember now, then you've made your point and you get to move on."), p.505, Ls.5–7 ("If he denies that he made the statement, then extrinsic evidence is admissible. If he doesn't deny it, then impeachment is complete."), p.507, Ls.3–5 ("[I]f he denies it, confront him with it. If he still denies it, I'll let extrinsic evidence in. If he doesn't deny it, then you've made your point.").

Folk cites to the Court of Appeals decision in *Preuss v. Thomson*, 112 Idaho 169, 730 P.2d 1089 (Ct. App. 1986). There, the Court of Appeals interpreted Idaho Rule of Civil Procedure 43(b)(8), since replaced by Idaho Rule of Evidence 613, and held that "[t]estimony by a witness that he or she cannot remember is sufficient to complete the foundation for impeachment with a prior inconsistent statement." *Preuss*, 112 Idaho at 171, 730 P.2d at 1091.

Folk's briefing cites to large portions of the record generally, but not to any specific instance of an alleged erroneous ruling by the district court. Compounding the problem, Folk's citations broadly cover instances where both Folk and the district court discussed issues relating to refreshing a witness' memory under Idaho Rule of Evidence 612 as well as impeaching a witness with prior inconsistent statements under Idaho Rule of Evidence 613. Folk makes no attempt to differentiate the district court's evidentiary rulings; rather, Folk lumps them all

9

together under the broad assertion that the prior statements were admissible under Rule 613(b), and the district court erred. "This Court will not search the record on appeal for error." *Liponis v. Bach*, 149 Idaho 372, 375, 234 P.3d 696, 699 (2010).

To the extent that Folk has identified specific statements by the district court, we can find no error. The district court recognized that Child's prior testimony could be used as extrinsic evidence to impeach Child's inconsistent statements under Rule 613 and that an admission that the prior statements were made following Child's testimony that he could not remember making the statements completed the impeachment. "The trial court has broad discretion in the admission and exclusion of evidence and its decision to admit evidence will be reversed only when there has been a clear abuse of that discretion." *State v. Lopez-Orozco*, 159 Idaho 375, 377, 360 P.3d 1056, 1058 (2015) (quoting *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005)). Folk frankly concedes that many of the evidentiary rulings and exchanges were muddled during the trial. We conclude that Folk has not shown a clear instance where the district court abused its discretion.

## D. The district court did not abuse its discretion when it admitted Detective Galbreaith's testimony.

Folk argues the district court erred by admitting Detective Galbreaith's testimony that Child told Galbreaith that Folk put his mouth on Child's genitals during an interview. Folk contends that he did not "open the door" to Galbreaith's testimony by eliciting Child's testimony about the interview or reading portions of the transcript of the interview into the record. Folk concludes that Galbreaith's testimony was inadmissible hearsay because the out-of-court statement made by Child was used to prove the truth of the matter asserted and it was not offered to rebut an express or implied charge of recent fabrication or improper influence or motive, or to rehabilitate Child.

The State responds that Folk did indeed open the door for Galbreaith's testimony and that Folk fails to address the actual ruling of the district court. The State contends that the district court specifically admitted the testimony for the purpose of evaluating Child's credibility rather than substantive evidence and properly instructed the jury not to consider Galbreaith's testimony for the truth of Child's statement.

During his cross-examination of Child, Folk initiated the following exchange:

[DEFENDANT FOLK]: When did you tell your mom that Jon put his mouth on your penis?

10

A: I don't remember.

Q: Do you remember having an interview with this man, Detective Galbreaith?

A: Um, no.

DEFENDANT FOLK: Your Honor, I would ask the State to stipulate that [Child] did have an interview with Detective Galbreaith.

[STATE'S COUNSEL]: That's fine. I'll stipulate to that.

THE COURT: Okay. Fine. The record will reflect that there was an interview.

…

DEFENDANT FOLK: Do you remember saying – do you remember telling the detective that Jon – that he didn't actually touch me?

A: No.

Q: Would it help to refresh your memory if you looked at the transcript?

A: Maybe. I don't know.

DEFENDANT FOLK: Your Honor, I'd like to publish the interview with Detective Galbreaith.

THE COURT: Which transcript are you referring to?

DEFENDANT FOLK: The interview of [Child] and Detective Galbreaith.

THE COURT: [State's Counsel]?

[STATE'S COUNSEL]: Your Honor, this one doesn't get published. It's not the record.

THE COURT: Right. You're asking to publish it. Do you mean you want to have the witness shown it to look at but not show it to the jury?

DEFENDANT FOLK: Oh, that's correct.

THE COURT: Is that what you're asking for?

DEFENDANT FOLK: Yes.

THE COURT: Okay. If you want him to see that, then you may show it to him.

DEFENDANT FOLK: Great. Would the court like to use the official copy or --

At that point in the examination, Folk was unable to produce the correct transcript of the interview. Instead, he questioned Child on other subjects until the correct transcript was located.

Later in the cross-examination, Folk returned to the issue of Child's interview:

DEFENDANT FOLK: Your Honor, I would ask the court to ask the State to stipulate that they've received a copy of Detective Galbreaith's interview, an enhanced copy.

[STATE'S COUNSEL]: We have it. So we I think that's it there.

THE COURT: I understand it's been supplied to the State. If it didn't, I'm sure --

11

[STATE'S COUNSEL]: It's right there, Your Honor.

THE COURT: I'm sorry. I thought it had been.

[STATE'S COUNSEL]: We made a copy of that.

THE COURT: Okay. The State now has a copy of it. Go ahead, Mr. Folk.

DEFENDANT FOLK: Does the court have a copy of it also?

THE COURT: I think they got the court's copy.

THE CLERK: No.

THE COURT: We have one for ourselves? Yes, so we have one.

DEFENDANT FOLK: Excellent.

DEFENDANT FOLK: [Child], do you remember the interview with Detective Galbreaith?

A: Nope.

Q: You don't remember it at all?

A: No. I kind of remember it, but --

Q: Earlier you said that when Jon was -- put his mouth on your penis, that there was a popping sound. Did you ever say that there was any other descriptions of it?

A: Yeah.

Q: Could you tell me what those were?

A: Be like when you have a sucker and you kind of pull it out of your mouth, that sound it makes, that's what sound.

Q: Did you ever describe it as biting?

A: Not that I remember.

DEFENDANT FOLK: Your Honor, I'd like to refresh his memory with Detective Galbreaith's interview transcript.

THE COURT: Okay. A copy of the transcript is being handed to the witness. And this is for refreshment; is that correct, Mr. Folk?

This exchange demonstrates that Folk's cross-examination of Child raised the subject of whether Child told Galbreaith that Folk had not touched him. Although Folk contends that he did not actually introduce Child's statement from the interview, the clear implication presented to the jury was that Child told Galbreaith that Folk had not touched him.

Further, the district court gave the jury a specific limiting instruction following Galbreaith's testimony:

THE COURT: Okay. Before you ask that question, I'm going to admonish the jury at this time similar to what I did yesterday.

12

There's been some reference to an interview that took place. That interview was not under oath. The interview was referenced yesterday during the trial in an effort to impeach the victim. And I advised you at the end of the victim's – alleged victim's testimony that that evidence of an unsworn statement that may have been made to someone is not actual evidence that you can consider in determining the guilt or innocence of the defendant. You can consider that evidence only for the purpose of determining the credibility of the witness.

Now today you've heard some similar testimony from the other part of that conversation, from the witness that's now testifying. The evidence that he's just given you about what was said during the interview is not evidence that you can consider in determining the guilt or innocence of the defendant. That's very important. That cannot be considered for that purpose. The only reason that you can consider the testimony you've just heard is in determining the credibility of the witness and whether the things he said were credible or not. And that's the only purpose for which such evidence may be considered by you in your deliberation. Okay?

Folk does not contend that the district court's decision to admit the testimony for purposes of evaluating Child's credibility was erroneous or that the district court's limiting instruction was erroneous. Thus, we hold that Folk has not shown that the district court abused its discretion when it admitted Galbreaith's testimony.

### E. The district court did not err when it denied Folk's motion for a judgment of acquittal pursuit to Idaho Criminal Rule 29(a).

At the close of the State's case, Folk motioned for a judgment of acquittal under Idaho Criminal Rule 29. Folk argued that the State had failed to present substantial and competent evidence as to Folk's intent. The district court denied the motion concluding:

And that on the issue of intent, which was the only issue specifically addressed by the defense, certainly from the totality of the circumstances I believe the jury can infer the intent. Certainly there was some evidence. The court just heard that the defendant may have had such intent from witness Blair. But again there was lots of surrounding circumstances from which it can be inferred, including some specific and graphic testimony.

Folk contends that because the State did not present any evidence that Folk tickled Child or touched Child's hips with the intent to satisfy his sexual desires, no rational trier of fact could have found beyond a reasonable doubt that Folk touched Child with the requisite intent.

As we discussed earlier, "[s]pecific intent may, and ordinarily must, be proved by circumstantial evidence. . . . One's intent may be proved by his acts and conduct, and such is the usual and customary mode of proving intent." *State v. Oldham*, 92 Idaho 124, 132, 438 P.2d 275,

283 (1968) (internal citations and quotations omitted); *State v. Cheatham*, 134 Idaho 565, 572, 6 P.3d 815, 822 (2000).

> Under I.C.R. 29, the district court may set aside a jury verdict and enter judgment of acquittal if the evidence is insufficient to sustain a conviction. That is because the Fourteenth Amendment of the United States Constitution guarantees the right to due process, and the U.S. Supreme Court has held that as a part of that due process, no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. However, appellate review of the sufficiency of the evidence is limited in scope.

*State v. Eliasen*, 158 Idaho 542, 545, 348 P.3d 157, 160 (2015) (internal citations, quotations, and alterations omitted). "The relevant inquiry is not whether this Court would find the defendant to be guilty beyond a reasonable doubt, but whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* at 546, 348 P.3d at 161 (quoting *State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2012)).

We hold that the State presented substantial and competent evidence of Folk's actions and conduct such that, when taken in the light most favorable to the prosecution, a rational trier of fact could have found that the essential element of intent was met beyond a reasonable doubt. Therefore, the district court did not err when it denied Folk's motion for a judgment of acquittal.

**F. The prosecutor did not commit misconduct amounting to fundamental error.**

"On appeal, the standard of review governing claims of prosecutorial misconduct depends on whether the defendant objected to the misconduct at trial. As a general rule, we will not consider arguments made for the first time on appeal." *State v. Severson*, 147 Idaho 694, 715, 215 P.3d 414, 435 (2009). "When the alleged error constitutes a fundamental error, however, review on appeal is permissible." *Id.* at 715–16, 215 P.3d at 435–36. "Accordingly, when an objection to prosecutorial misconduct is not raised at trial, the misconduct will serve as a basis for setting aside a conviction only when the conduct is sufficiently egregious to result in fundamental error." *Id* at 716, 215 P.3d at 436. (internal quotation and citation omitted). In such an instance, we apply the following standard of review:

> Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision);

14

and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010).

Folk argues this Court should vacate his judgment of conviction because the prosecutor committed misconduct amounting to fundamental error for various statements made during closing arguments. Specifically, Folk argues the prosecutor: (1) asked the jury to infer facts which the prosecutor knew to be false; (2) impermissibly commented on Folk's Fifth Amendment right to remain silent and Sixth Amendment right to confront Child; and, (3) impermissibly appealed to the emotions, passions, or prejudices of the jury. These arguments are addressed in turn.

### 1. The prosecutor did not ask the jury to infer facts which the prosecutor knew to be false.

During his closing argument, the prosecutor referenced Blair's testimony that Folk had stated a desire to sexually abuse children:

> You heard testimony from Blaine Blair, who's an interesting character. This is somebody that the defendant lived with, somebody who he shared secrets with, who he talked with. You heard him testify that he saw the defendant go in the bedroom with [Child]. You heard him testify that the defendant had stated to him a desire to sexually abuse children.
>
> Mr. Folk had him on the stand, and he steered him pretty good on some other stuff. Didn't even ask him about that question. Didn't ask him a single thing. When was it supposed to happen? Just, you know, any sort of argument about that.

Folk argues that the prosecutor implied that Blair's testimony was incontrovertible despite knowing that Blair had made a prior inconsistent statement during his conversation with Galbreaith.

"Generally, both parties are given wide latitude in making their arguments to the jury and discussing the evidence and inferences to be made therefrom." *Severson*, 147 Idaho at 720, 215 P.3d at 440. "The Court has recognized, however, that the line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone." *State v. Parker*, 157 Idaho 132, 146, 334 P.3d 806, 820 (2014) (internal quotation and citation omitted).

> It is certainly within the bounds of fair advocacy for a prosecutor, like any lawyer, to ask the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true. But it is decidedly improper for the government to propound inferences that it knows to be false, or has very strong

15

reason to doubt, particularly when it refuses to acknowledge the error afterwards to either the trial court or this court and instead offers far-fetched explanations of its actions. [T]he difference between a lawyer asking the jury to infer only things that he believed in good faith might be true and making factual assertions he well knew were untrue is the difference between fair advocacy and misconduct.

*United States v. Blueford*, 312 F.3d 962, 968–69 (9th Cir. 2002) (internal citations and quotations omitted). At issue here is Blair's statement to Galbreaith during an interview conducted on January 8, 2008, after the alleged incident with Child:

> MR. BLAIR: Well, [Folk] left around after the holidays was done and at New Year's he came back for his bicycle and just says you guys are going to miss me and he gave me a hug and said good-bye and that's about it.
>
> OFFICER GALBREAITH: When did he come back for his bike?
>
> MR. BLAIR: After the holidays.
>
> OFFICER GALBREAITH: Okay.
>
> MR. BLAIR: New Year's.
>
> OFFICER GALBREAITH: Do you remember what day?
>
> MR. BLAIR: I think it was about Wednesday.
>
> OFFICER GALBREAITH: Like a couple of days ago Wednesday?
>
> MR. BLAIR: No, not a couple days, but –
>
> OFFICER GALBREAITH: A week and a couple days?
>
> MR. BLAIR: Right.
>
> OFFICER GALBREAITH: Okay. He told you he'd miss you and then left, huh?
>
> MR. BLAIR: Right. We were pretty close and he said to me that he was quit anyway.
>
> OFFICER GALBREAITH: He was quit what?
>
> MR. BLAIR: Was going to quit having contact with children.
>
> OFFICER GALBREAITH: Oh. When did he tell you that?
>
> MR. BLAIR: He told me that several times.
>
> OFFICER GALBREAITH: Oh.
>
> MR. BLAIR: He also said he was going to go to Africa.

Folk contends that this interview constitutes clear impeachment evidence that the prosecutor knew was available but could not be submitted by Folk without opening the door to evidence of Folk's prior instances of sexual abuse with children. Folk's argument is unpersuasive. A reasonable reading of the interview is that Folk's statements that he was "going to quit having

contact with children" could have been made during a conversation after the alleged incident, thus, the interview would not impeach Blair's testimony that Folk had previously expressed a desire to sexually abuse children. Even if this Court agreed with Folk's argument that the prosecutor implied that Blair's testimony was "incontrovertible" and not simply "uncontroverted," the record does not support the contention that the prosecutor knew that implication was false or that the prosecutor did not have a good faith basis for advancing this argument.

> **2. The prosecutor did not impermissibly comment on Folk's Fifth Amendment rights, Sixth Amendment rights, or impermissibly appeal to the emotions, passions, and prejudices of the jury.**

During his rebuttal closing argument, the prosecutor stated:

> Ladies and gentlemen, Mr. Folk doesn't want to be found guilty. And he didn't want to be cross-examined. He didn't want an attorney asking him questions. The victim of this crime didn't get that luxury. And he stood – he sat here and he was cross-examined for hours about what had happened. He's not the one who's alleged to have done something wrong.

Folk contends that these statements were impermissible commentary on Folk's Fifth and Sixth Amendment rights, and that the prosecutor impermissibly appealed to the emotions, passions, and prejudices of the jury.

> The Fifth Amendment prohibits prosecutors from making direct or indirect comments on a defendant's failure to testify in order to infer guilt. However, the United States Supreme Court has noted that in determining whether a prosecutor's comment violated the Fifth Amendment, a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations. *Additionally, such comments must be evaluated in light of defense conduct and in the context of the entire trial.*

*Severson*, 147 Idaho at 718–19, 215 P.3d at 438–39 (internal citations and quotations omitted) (emphasis added). The record shows the prosecutor's comments do not rise to the level of fundamental error based on Folk's conduct, closing argument, and the context of the entire trial. The relevant portion of Folk's closing argument is as follows:

> [FOLK]: You may have noticed that I did not testify this time. I have testified before.
>
> [STATE'S COUNSEL]: Objection. Your Honor. I don't think this is proper argument in any sort of way.
>
> THE COURT: Well, so far, I don't find it improper, inasmuch as the state's already produced evidence that he testified before. So I don't think he has said

anything so far the jury doesn't know. But I'm listening very intently to make sure he stays within the bounds of the law.

DEFENDANT FOLK: Thank you.

It is a horror to be charged with a crime and to be innocent. If I protest too much, I will be seen as guilty. If I get angry, I will be seen as guilty. If I forget a fact under the heat of interrogation, I may be seen as guilty.

People often do not believe the accused who testifies because they think that he may not only be guilty of a crime, but he may take the oath and lie under oath to escape conviction. Nothing I say on the witness stand can ever acquit me.

I stand before you now as pleading not guilty. Taking the stand allows the prosecutor to make the most innocent person look guilty. And anyway, the state has failed to prove its case. They cannot prove what was not in my mind any more than the state can prove what was in my mind.

What is there for me to rebut that standing here before you that pleading not guilty does not rebut? I know two things: I know I'm not guilty of this crime, and I know the state did not prove me guilty of this crime.

I know you must be afraid; what if you convict an innocent man? "What if you fail to do justice? I have to tell you for the last two days – excuse me, three days, I have been scared to death. Representing myself is the hardest thing that I've ever had to do. It's the bravest thing that I've ever did. Please put an end to this madness and find me innocent; not just not guilty, but find me innocent.

Please hold to your oath to hold the state to its burden to prove that I had – that I had sexual contact with [Child], and your verdict will be innocent.

It appears that the prosecutor's comments were made in response to Folk's assertion that taking the stand allows a prosecutor to make innocent people look guilty. "Prosecutorial misconduct rises to the level of fundamental error if it is 'calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence.' " *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003) (quoting *State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994)). Although arguments of the type advanced by the prosecutor are not to be encouraged, we are unable to conclude that they were not made in response to Folk's explanation for not taking the stand or were "calculated to inflame the minds" of the jurors and influence them to determine guilt on factors outside of the evidence.

"A conviction will be set aside for prosecutorial misconduct only when the conduct is sufficiently egregious as to result in fundamental error." *Sheahan*, 139 Idaho at, 280, 77 P.3d at 969. "More specifically, prosecutorial misconduct during closing arguments will constitute fundamental error only if the comments were so egregious or inflammatory that any consequent prejudice could not have been remedied by a ruling from the trial court informing the jury that

the comments should be disregarded." *Id.* (internal quotation omitted). Following the prosecutor's closing argument, the district court instructed the jury as follows:

> One thing that I feel legally bound to address at this time, just to remind the jury – I wouldn't normally do this, but at the beginning of [the prosecutor's] rebuttal he did mention that the defendant didn't want to be cross-examined by the prosecutor. I understand why he made that comment. Certainly it's a response to something that was said by the defendant himself in his closing argument.
>
> But I do need to remind the jury that it's important that you consider and remember instruction 14-A. And 14-A says that you must not draw any inference of guilt from the fact that the defendant has not testified, nor should this fact be discussed by you or enter into your deliberations in any way.
>
> Those are things that we don't talk about and probably shouldn't have been brought up. So please disregard any comment to the defendant's failure to testify.

We hold that any error on the part of the prosecutor did not rise to the level of fundamental error because it was promptly remedied by an instruction from the district court to disregard such statements.

## G. The cumulative error doctrine is not applicable in this case.

Folk argues that this Court should vacate his judgment of conviction because, even if all of the alleged errors are individually harmless, the accumulation of errors deprived Folk of his Fourteenth Amendment right to due process of law and a fair trial. As we have found no error, the cumulative error doctrine is not applicable.

## IV. CONCLUSION

We affirm Folk's judgment of conviction.

Chief Justice BURDICK, Justices JONES, BRODY, and Justice Pro Tem EISMANN **CONCUR.**

19