**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49904**

| | | |
|---|---|---|
| MICHELLE SARA OKSMAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, January 2024 Term |
| | ) | |
| v. | ) | Opinion Filed: June 4, 2024 |
| | ) | |
| THE CITY OF IDAHO FALLS, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Michael J. Whyte, District Judge.

The district court judgment is <u>vacated,</u> and the case is <u>remanded for a new trial</u>.

Browning Law, Idaho Falls, for Appellant. Allen H. Browning argued.

Hall Angell & Associates, LLP, Idaho Falls, for Respondent. Sam L. Angell argued.

_____

MEYER, Justice.

After slipping and falling on a wet surface in the lobby of the West Deist Aquatic Center and injuring her knee, Appellant Michelle Oksman brought a lawsuit alleging negligence against Respondent City of Idaho Falls (the "City"). The case proceeded to trial, and the jury returned a verdict in favor of the City. Oksman appeals several evidentiary rulings from trial, as well as the district court's refusal to give a jury instruction Oksman requested regarding the reasonable value of necessary services. For the reasons set forth below, we vacate the district court's judgment entered following the jury's verdict and remand the case for a new trial.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On July 8, 2016, Oksman sustained injuries after she slipped and fell on a wet tile floor at the West Deist Aquatic Center, a recreational swimming facility owned and operated by the City. Oksman was at the aquatic center for her children's swimming lessons and fell as she was leaving the locker room. Shortly after her fall, Oksman alleged a woman attending to her said, "People fall

1

down there all the time." Oksman was unable to identify the person who made this statement until May 2020.

In July 2018, Oksman filed a complaint and demand for jury trial alleging that the City was negligent in its operation of the aquatic center. In response, the City filed a motion for summary judgment, arguing the evidence did not establish that it had any actual or constructive notice of a dangerous condition; therefore, it did not breach any duty owed to Oksman.

The district court granted the City's motion after concluding that the City had no actual notice of water, or any other fluid, at the spot where Oksman fell, nor did it fail to take reasonable action to remedy dangerous conditions caused by possible wet spots throughout the aquatic center. The district court relied on an affidavit the City submitted from the aquatic center's manager, Rhonda Newman, who stated the City has a policy for identifying, cleaning, and reporting spills, puddles, residual water, and other slipping hazards at the aquatic center, and that there were no recorded spills or hazards on the day of Oksman's fall. Newman testified that she was working at the aquatic center that day and did not see any liquids on the floor in the area where Oksman fell. The district court held that the mere fact that an accident occurred did not create a reasonable inference that the City's inspections, which were conducted by lifeguards every 15 to 30 minutes, and its remedial measures were deficient. The court noted that to find otherwise would have required the court to conclude that the City (and all other landowners) is strictly liable for all accidents on its premises, which is not consistent with Idaho law.

Oksman filed a motion to reconsider, arguing that there were disputed issues of material fact that precluded summary judgment. Specifically, Oksman claimed for the first time in May 2020 that it was Rhonda Newman—the manager of the aquatic center—who had stated that people fall down all the time at the location where Oksman fell. Oksman explained that she was able to identify Newman after examining Newman's Facebook page. Oksman argued that given her position as the manager of the aquatic center, Newman was acting as the City's agent when she made the statement; thus, there was sufficient evidence to demonstrate that the City knew of a dangerous condition in that particular area and did not have an effective plan to remedy it.

After concluding that there was a disputed issue of fact concerning the frequency of slip and fall incidents, the district court issued a memorandum decision and order withdrawing its grant of summary judgment in favor of the City. The court explained that the frequency of falls is material to the issue of whether the City's operating methods were "likely to cause a dangerous

condition." The court went on to state that the frequency of falls created an inference that the City's inspection and clean-up policy and procedures were inadequate, resulting in Oksman's accident. The case then proceeded to a jury trial.

At trial, Oksman attempted to testify that Newman was the person who had stated that people fall all the time in the same location where Oksman fell. The City objected to the testimony as hearsay. The district court sustained the objection based on Oksman's initial inability to identify who made the statement, and the fact that other people were in the area when Oksman fell. Oksman later called Newman as a witness, and Newman denied making the statement.

While examining Newman during her case-in-chief, Oksman's counsel read from Newman's deposition while asking Newman to confirm the questions she was asked and the answers she gave at her deposition prior to trial. The City objected to the form of the questions, arguing it was improper impeachment. The district court sustained the objections and instructed Oksman's counsel to ask a current question before using Newman's deposition to impeach her. When the City later cross-examined Newman, Oksman objected to several questions as leading, which the district court overruled because they were asked during cross-examination.

Near the end of Oksman's case-in-chief, Oksman's attorney tried to recall Oksman as a witness to respond to Newman's testimony that she did not make the statement that people fall all the time where Oksman did. The district court did not permit Oksman to retake the stand at that time, but allowed Oksman to offer rebuttal testimony after the defense had an opportunity to present its case.

Once both parties rested, the district court held a jury instruction conference on the record. When discussing an instruction regarding damages, Oksman objected to the failure to include a paragraph about the reasonable value for necessary services from Idaho Jury Instruction ("IDJI") 9.01.B.4. The court declined to include Oksman's requested instruction, explaining that because there was no evidence at trial that Oksman had paid any out-of-pocket expenses for necessary services, the jury would not be instructed on that issue.

The jury concluded that the City was not negligent and returned a verdict in its favor. The district court then entered a judgment dismissing Oksman's complaint with prejudice. The City promptly filed a memorandum of costs and attorney fees, citing Idaho Rule of Civil Procedure 54 and Idaho Code section 6-918A. Section 6-918A allows the district court to award attorney fees to the prevailing party in litigation that has been initiated under the Idaho Tort Claims Act when the

3

party against whom the award is sought is found guilty of bad faith in the commencement, conduct, maintenance, or defense of the action. The district court granted the City costs as the prevailing party, but denied the request for attorney fees after concluding Oksman did not pursue any part of her case in bad faith. Oksman filed a timely notice of appeal.

## II. ISSUES ON APPEAL

1. Did the district court abuse its discretion when it limited Oksman's testimony at trial?
2. Did the district court abuse its discretion when it limited Oksman's ability to introduce statements from Newman's deposition at trial?
3. Did the district court abuse its discretion when it allowed the City to ask Newman leading questions?
4. Did the district court err when it declined to give Oksman's requested jury instruction?
5. Did the district court err in awarding the City costs as the prevailing party below?
6. Is either party entitled to attorney fees on appeal?

## III. STANDARDS OF REVIEW

We review trial courts' evidentiary rulings applying an abuse of discretion standard. *State v. Jeske*, 164 Idaho 862, 867, 436 P.3d 683, 688 (2019) (citing *State v. Anderson*, 162 Idaho 610, 614, 402 P.3d 1063, 1067 (2017)). When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

"The propriety of jury instructions is a question of law over which this Court exercises free review." *Ballard v. Kerr*, 160 Idaho 674, 702, 378 P.3d 464, 492 (2016) (quoting *Mackay v. Four Rivers Packing Co.*, 151 Idaho 388, 391, 257 P.3d 755, 758 (2011)). When considering whether a jury instruction should or should not have been given, the Court determines "whether there is evidence at trial to support the instruction, and whether the instruction is a correct statement of the law." *Id.* (quoting *Mackay*, 151 Idaho at 391, 257 P.3d at 758).

## IV. ANALYSIS

### A. The district court abused its discretion by limiting Oksman's testimony at trial.

Oksman first argues that the district court erroneously precluded her from testifying that Rhonda Newman made the comment that "people fall down there all the time" at trial. Oksman contends this statement, made by the manager on duty at the time of Oksman's injury,

4

demonstrated that the City knew of a dangerous condition in that particular area and did not have an effective plan to remedy it. However, when Oksman attempted at trial to testify that Newman made this statement, the district court sustained the City's hearsay objection:

> Q. [by Oksman's counsel] Okay. So let's go to what you said next. You were talking about what happened after you fell. You said some people were coming?
>
> A. [Oksman] Yes. They brought a chair around. I don't know how I got up off of the ground. This portion is a little bit blurry because of the pain that I was in. I remember the chair coming around and, like, pulling myself up off of the ground and getting on to this folding chair, I believe it was. The woman, who ran the front desk area, had called for the lifeguard.
>
> Q. Is that Rhonda Newman?
>
> A. That was Rhonda Newman. Yes, correct.
>
> Q. Then what happened?
>
> A. There was a comment about me falling –
>
> [CITY'S COUNSEL]: Objection. Hearsay. I may need a sidebar on this one.
>
> . . . .
>
> (Sidebar conference held off the record)
>
> . . . .
>
> THE COURT: Ladies and gentlemen of the jury, I apologize for that delay. . . . [P]art of my job is to make sure that facts are presented to you in the proper form as authorized by Idaho law. . . .
>
> . . . .
>
> . . . There is a rule of evidence, that under certain circumstances, prevents what's called hearsay.
>
> Hearsay generally is if somebody says something to you in court, the start of that rule is I can't testify as to what somebody else said. That's hearsay. There are exceptions that would then allow me to testify as to what somebody said. . . .
>
> . . . .
>
> With that, [Oksman's counsel], I will turn it back over to you to try to lay some foundation.
>
> [OKSMAN'S COUNSEL]: Thanks, your Honor.
>
> Q. [by Oksman's counsel] . . . was there a somebody -- was there a female that was talking to you that was at the front desk on that day?
>
> A. Yes.

5

Q. Okay. Now, you had said in your deposition that there was -- the person might have been Ashley, might have been Rhonda.

Since that time, since you had your deposition, have you been able to come to a conclusion as to who the person was that was talking to you?

A. Yes.

Q. How did you come to that conclusion?

A. By looking at photos.

Q. Is that Facebook photos?

A. Facebook photos, correct.

Q. Okay. And who was the person that was talking?

A. Rhonda Newman.

Q. Okay. Earlier in your deposition, you said it was either Sarah Jensen or Rhonda.

A. No. I had said either Ashley --

Q. I'm sorry, Ashley. Sorry.

A. I only had one name, Ashley or the other red-headed woman who worked there, I believe was what I said in my deposition.

Q. Okay. You've seen Facebook photos of Rhonda Newman since then?

A. Yes.

Q. So who was it that made this comment to you?

A. It was Rhonda Newman.

[OKSMAN'S COUNSEL]: Okay. With that, your Honor, I would ask her what the comment was.

Before allowing Oksman to answer, the district court invited the City's counsel to make an objection:

THE COURT: Before we get there, is [sic] there any other questions you would like to ask in objection?

[CITY'S COUNSEL]: Yes. May I ask a couple?

THE COURT: Yes, you may.

. . . .

Q. [by the City's counsel] Ms. Oksman, in your deposition, to be clear, your statement was "A woman named Ashley made a comment," correct?

A. That was my initial comment, yes.

Q. That was in -- your deposition was taken in 2019, September of 2019, 3 years ago nearly?

6

A. Correct.

[CITY'S COUNSEL]: I would offer the same objection. Hearsay.

The court agreed, and asked Oksman's counsel to provide a little more foundation:

Q. [by Oksman's counsel] You gave a name at the time of your deposition that was taken 3 years after the event, correct?

A. That's right.

Q. Okay. Since that time of the deposition, I understand you looked at photographs of a person by the name of Rhonda Newman?

A. That's right.

Q. Is there any doubt, after looking at the photographs of Rhonda Newman, as to who it was that made the comment to you?

A. No. There's no doubt. There was doubt when I gave my deposition. I said in my deposition that there was -- I believed it was Ashley or the other red-headed woman that worked there.

Q. Is that because they looked alike?

A. I believe they did from my recollection, yes.

Q. And so today, do you have any doubt that the person you're talking about was whom?

A. The person that made the comment was Rhonda Newman.

[OKSMAN'S COUNSEL]: With that, I would offer it, your Honor. Actually I can go into a little bit more foundation.

THE COURT: Please.

Q. [by Oksman's counsel] Was there a person at that time that was giving other people orders as to what to do?

A. Yes.

Q. Who?

A. Rhonda Newman.

Q. The person in charge then would appear to be whom?

A. Rhonda Newman, the manager.

Q. It's the same Rhonda Newman that you're about to say what the comment she made to you at the time?

A. That's correct.

[OKSMAN'S COUNSEL]: I would offer it, your Honor, as an exception to the hearsay rule.

7

Before allowing Oksman to answer, the district court again invited the City's counsel to make an objection:

> THE COURT: [City's counsel]?
>
> [CITY'S COUNSEL]: Could I ask a couple more questions?
>
> THE COURT: Yes, you may, please.
>
> Q. [by the City's counsel] This was on the break in between swimming lessons, correct?
>
> A. I'm sorry?
>
> Q. Your fall occurred on the break during swim lessons, correct?
>
> A. No. It was after swim lessons.
>
> Q. After swim lessons?
>
> A. Correct.
>
> Q. There were other people in the Aquatic Center, correct?
>
> A. Of course, yes.
>
> Q. There were others around you that helped you up onto the chair and assisted you in your distress?
>
> A. I don't think anyone helped me up onto the chair, but they brought a chair, yes.
>
> Q. My point is there were multiple people around you?
>
> A. There were people around, yes.
>
> [CITY'S COUNSEL]: Same objection. Hearsay.

The district court sustained the City's objection on the basis that Oksman did not originally know who made the comment and the court still had questions with respect to others that were there:

> THE COURT: It's on the basis of right now what I've got is a potential comment and there is a question -- there was a question at the time as to who made that comment. She apparently didn't know. I have questions with respect to others that are there. So ultimately it might need to be narrowed down a little bit more . . . but right now I'm going to sustain that objection.
>
> You're certainly welcome to continue on this path, or as I've indicated, of course I know you're going to be calling Ms. Newman and I know the City is going to be calling Ms. Newman and that may assist me if this is brought up at a later time after other testimony from some other parties.

Oksman argues that the district court erred in sustaining the City's hearsay objection because the City did not dispute that Newman was the manager of the aquatic center, that she was

8

an employee of the City, or that she was acting in the scope of her employment while at the aquatic center on the day in question. Therefore, the statement was not hearsay. I.R.E. 801(d)(2)(D). Oksman contends that in disallowing the evidence, giving specific weight to there being some other people in the area, and by commenting that he did not believe Oksman could identify Newman because she did not identify Newman until later, the district court "destroyed" her case. The City counters that the district court had discretion to determine whether sufficient foundation had been laid, and the court did nothing more than rule on an objection and explain its reasoning.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 545, 314 P.3d 593, 600 (2013) (citation omitted); I.R.E. 801(c). Statements are not hearsay under Rule 801 if "made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . ." I.R.E. 801(d)(2)(D). To assert evidence of an agency relationship under Rule 801(d)(2)(D), foundation of "independent evidence of the agency relationship, i.e., evidence apart from the alleged agent's own statements, [is] necessary before the alleged agent's out of court declarations may be admitted." *Vreeken v. Lockwood Eng'g, B.V.*, 148 Idaho 89, 107, 218 P.3d 1150, 1168 (2009) (quoting *R Homes Corp. v. Herr*, 142 Idaho 87, 92, 123 P.3d 720, 725 (Ct. App. 2005)).

It is true that the City does not dispute that when Rhonda Newman was at the aquatic center on the day in question, she was acting in the scope of her employment relationship with the City. Rather, the issue is whether Oksman laid sufficient foundation to support her attempted testimony that Newman (rather than someone else in the vicinity) made the statement "people fall down there all the time." Rule 602 of the Idaho Rules of Evidence allows a witness to testify "to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." I.R.E. 602. The rule allows the witness's "own testimony" to prove personal knowledge. *Id*. Oksman testified at trial that although she was originally unsure who made the statement, she later came to the realization that it was Newman after seeing Newman's Facebook page. Oksman testified with certainty as to who made the statement and how she knew who made the statement. Oksman testified to the basis for her personal knowledge that the woman who made the statement was Newman, which was sufficient to satisfy the requirements of Rule 602.

The district court erred when it made what appeared to be a credibility determination that there was a question whether the comment was made and who made it:

It's on the basis of right now what I've got is a potential comment and there is a question -- there was a question at the time as to who made that comment. [Oksman] apparently didn't know. I have questions with respect to others that are there. So ultimately it might need to be narrowed down a little bit more . . . but right now I'm going to sustain that [hearsay] objection.

At trial, there was an issue whether Newman made the comment, but that was a determination for the jury to make. The district court erred by not allowing Oksman to testify based on her personal knowledge that Newman made the statement, particularly when the court's decision was based on its doubts as to Oksman's ability to identify who among many other people in the area may have made the statement.

The City suggests that if the district court erred in limiting Oksman's testimony, the error was harmless because Oksman was able to call Newman as a witness at trial, and Oksman was able to testify in rebuttal. When Oksman's attorney asked Newman if she made the statement that "people fall down there all the time" Newman replied, "I did not." On rebuttal, Oksman testified that this testimony of Newman was not true.

Regarding evidentiary rulings, "[e]rror is prejudicial only if it could have affected or did affect the outcome of the trial." *Burgess v. Salmon River Canal Co.*, 119 Idaho 299, 306, 805 P.2d 1223, 1230 (1991). Although Newman testified that she did not make the statement, and Oksman disputed Newman's disavowal, we disagree that any error in limiting Oksman's testimony was harmless. The City's knowledge of a dangerous condition was paramount to Oksman's case. By precluding Oksman from testifying that Newman made the statement, but allowing Newman to later testify she did not make the statement, the district court impermissibly took a credibility determination away from the jury. The district court's erroneous ruling not only prejudiced Oksman's substantial right to present her case, it prevented her from doing so in an effective manner. Oksman, as the plaintiff, presented her case first. Not allowing Oksman to testify during her case-in-chief that Newman, the undisputed manager of the aquatic center, said, "people fall down there all the time," but allowing Newman to testify that she did not make the statement, stripped Oksman's case of the effectiveness of the testimony. Of course, the jury would have been free to determine whether it believed Oksman that Newman made the statement, but blocking Oksman from presenting that testimony to the jury during her case-in-chief prejudiced her case.

Indeed, Newman's alleged statement led to the district court's decision withdrawing summary judgment in favor of the City based on an issue of fact concerning the frequency of falls

in the area where Oksman fell.  In granting Oksman's motion to reconsider summary judgment in the City's favor, the district court reasoned:

> Plaintiff has testified that Newman told her at the time of the fall that "people fall there all the time." However, Newman in her affidavit submitted in support of the City's motion for summary judgment testified that there had been no recent accidents at that location. Thus there appears to be a disputed issue of fact as to the frequency of accidents at the location of the fall. . . .
>
> . . . .
>
> Notwithstanding the City's general notice of wet areas due to the operation of the facility, this [c]ourt granted summary judgment on the grounds that the facility was operating pursuant to a policy of cleaning up water on the floor during lifeguard changes every 15 to 30 minutes, and the evidence did not support a claim that the policy was ineffective.
>
> However, the frequency of falls is material to the issue of whether the City's operating methods "were likely to cause a dangerous condition". Furthermore, the frequency of falls creates an inference that the City's inspection and clean-up policy and procedures are inadequate, resulting in Plaintiff's accident.
>
> Accordingly, this Court finds that the disputed issue of fact as to the frequency of slip and falls precludes a grant of summary judgment.[1]

(Footnote omitted.)

Then, at trial, the district court refused to allow the statement despite Oksman's testimony at trial that it was Newman who made the statement and she knew that based on identifying Newman through Newman's Facebook photos.

In short, the district court abused its discretion in granting the hearsay objection over Oksman's testimony that she knew it was Newman in her role as manager of the aquatic center who stated, "people fall down there all the time."  The error prejudiced Oksman, and accordingly, the judgment is vacated and the case is remanded for a new trial.

### B. Guidance on remand is provided on issues likely to rise again.

"Where an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand." *Hood v. Poorman*, 171 Idaho 176, 191, 519 P.3d 769, 784 (2022) (citation omitted). "In offering guidance, however, we are aware that such guidance should only be given on issues that are absolutely necessary, and regarding issues that have a practical effect on this appeal; otherwise, we would be

---

[1] We note that Judge Tingey was the district judge who granted the motions for summary judgment and reconsideration while Judge Whyte was the district judge who conducted the trial after Judge Tingey's retirement.

offering an impermissible advisory opinion cloaked as 'guidance.'" *Id*. (emphasis and citation omitted). There are several issues Oksman raised on appeal that are likely to arise again with a new trial. We will address each in turn.

1.  *The district court did not err when it denied Oksman's attempts to impeach Rhonda Newman with her deposition.*

Oksman argues that the district court erroneously precluded her from using Newman's deposition to impeach her during trial. After confirming that Newman was the manager of the aquatic center in 2016, Oksman's attorney "attempted to question Ms. Newman, using her deposition as a framework to allow highly directed questioning, as she was an adverse witness." Oksman's attorney would then read or paraphrase questions and answers from Newman's deposition transcript and ask if Newman agreed that was what she testified to during her deposition:

> Q. [by Oksman's counsel] And . . . you had your deposition taken in -- on September 2nd of 2020 in regard to this litigation?
>
> A. [Newman] Yes.
>
> Q. You know what the litigation is about; correct?
>
> A. That's correct.
>
> Q. At that time, we asked you, at your deposition, if you had any -- any records of -- let's see. Excuse me.
>
> I asked you if you had any records of the -- excuse me, just a moment.
>
> I'm just trying to do this without reading if I can.
>
> Oh, you indicated, as the manager for the aquatic center, you act as custodian for original and duplicate records of regularly conducted activities at the aquatic center; correct?

The City's attorney objected to the form of the question, arguing it was improper impeachment. The district court asked Oksman's counsel to rephrase the question as a current question rather than a question that may have been asked at some other time. Oksman's counsel explained "[t]here's a reason I'm asking it this way[,]" but agreed to follow the court's instruction and asked whether Newman was in charge of keeping track of records of activities that happen at the aquatic center. When Newman replied that she was, the following exchange took place:

> Q. [by Oksman's counsel] Okay. I would ask you: Do you have any records of anyone that inspected -- that made inspections of the front desk area in July of 2016 for safety?
>
> A. [Newman] Yes.

12

Q. And I asked you to produce those records back in September of 2020; correct?

A. I don't remember.

Q. Well, is it fair to say that you didn't have any records of -- just a moment. I want to be very exact on this. That's why I wanted to refer to the deposition.

You had indicated in an affidavit that you had signed that the City has "a policy for identifying, cleaning, and reporting spills, puddles, residual water, and other slipping hazards at the aquatic center, and these spills, puddles, residual water, and other slipping hazards that are discovered are reported by the employees of the aquatic center and all slips, falls, and other accidents are recorded as well."

The City's attorney again objected to the form, arguing it was improper impeachment and there was no question pending. The district court sustained the objection, and instructed Oksman's attorney to ask a current question with respect to the information he was trying to seek. Oksman's attorney continued to ask questions related to Newman's affidavit and deposition, and the district court continued to sustain the City's objections. Oksman's counsel then stated "[j]ust for the record, . . . I would like to indicate that, under Rule 32, I'm allowed to do it this way." Thereafter, Oksman's counsel acquiesced to the district court's instruction, and asked the following direct questions:

Q. ([by Oksman's counsel] Is it your contention that the City of Idaho Falls has a policy for identifying, cleaning, and reporting spills, puddles, residual water, and other slipping matters at the aquatic center?

Is that your position?

A. [Newman] Yes.

Q. Okay. And isn't it true that, when I asked you to produce records of that, that you produced none? Isn't that true?

A. Correct.

Q. And, "It's your contention that any spills, puddles, residual water, and other slipping hazards that the [sic] discovered are reported by the employees of the aquatic center and all slips, falls, and other accidents are recorded as well," and I asked you to produce those records and you did not; is that correct?

A. Correct.

However, later in the trial Oksman's counsel again tried to challenge Newman's testimony by reading excerpts from her deposition, and the City again objected:

Q. [by Oksman's counsel] "Okay. Sarah Jensen indicated that those would be times that you would expect there to be a little extra water on the floor because you had all of those kids [o]n the floor. Would that be correct?"

13

And your answer was?

[CITY'S COUNSEL]: Objection, Your Honor. Now we're just reading from the deposition again. There's no question pending.

THE COURT: I sustain.

On appeal, Oksman argues "[t]he court's bizarre rulings, refusing to allow a party's manager to be impeached by her prior deposition testimony, defeats the entire purpose of preparing for trial by taking the deposition of a party opponent." The City maintains that the district court did not abuse its discretion when ruling on Oksman's attempts to impeach Newman. The City emphasizes that Oksman was still permitted to impeach Newman using her deposition; the district court simply restricted Oksman's ability to introduce extrinsic evidence before Newman had testified.

Rule 32 of the Idaho Rules of Civil Procedure governs the use of depositions in court proceedings. Pertinent to this case, Rule 32(a)(1), (2), and (3) provide:

**(a) Using Depositions.**

(1) *In General*. At a hearing, trial or upon an interlocutory proceeding, all or part of a deposition may be used against a party on these conditions:

(A)  the party was present or represented at the taking of the deposition or had reasonable notice of it;

(B)  it is used to the extent it would be admissible under the Idaho Rules of Evidence if the deponent were present and testifying; and

(C)  the use is allowed by Rule 32(a)(2) through (8).

(2) *Impeachment and Other Uses*. Any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Idaho Rules of Evidence.

(3) *Deposition of Party, Agent, or Designee*. An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).

I.R.C.P. 32(a)(1) through (3).

In arguing generally that a party's deposition can be used for impeachment purposes and specifically that the deposition of a managing agent can be used for any purpose, Oksman overlooks the dual requirements of Rule 32(a)(1) and (a)(2).  Rule 32(a)(1) discusses the general rules applicable to the use of depositions in court proceedings and includes the requirement that the deposition's "use is allowed by Rule 32(a)(2) through (8)." I.R.C.P. 32(a)(1)(C). Thus, the Rule contemplates both that a party must satisfy 32(a)(1) and that use of the deposition fits one of

14

the uses set forth in 32(a)(2) through (8). Contrary to Oksman's argument on appeal, it was not enough to say the use of the deposition was for a permissible purpose under 32(a)(3). She also had to establish that she met the conditions for use contained in Rule 32(a)(1). That rule contains three elements: (1) that Newman was present at the deposition and had reasonable notice of it; (2) that the deposition is used to the extent it would be admissible under the Idaho Rules of Evidence if the deponent were present and testifying; and (3) the deposition's use is allowed by Rule 32(a)(2) through (8).

Oksman can meet the first and third requirements of Rule 32(a)(1), but not the second. Use of Newman's deposition must be admissible under the Idaho Rules of Evidence. In this case, Oksman asserts she was using the deposition to impeach Newman, but she failed to lay a proper foundation to impeach her. While Idaho Rule of Evidence 607 allows a party to attack a witness's credibility, there was nothing to attack in this case because Oksman did not first ask Newman a direct or current question to which she gave an inconsistent answer. In the absence of an answer inconsistent with her prior deposition testimony, there was no credibility issue for Oksman to attack. Because impeachment was her stated purpose for using the deposition, she failed to satisfy Rule 32(a)(1)(B). In *Slack v. Kelleher*, we held that "[a]ny part or all of a deposition may be used at trial, assuming compliance with Rule 32(a) of the Idaho Rules of Civil Procedure and admissibility under the Idaho Rules of Evidence." 140 Idaho 916, 924, 104 P.3d 958, 966 (2004).

No rule explicitly requires that a witness testify before extrinsic evidence of prior inconsistent statements may be admitted. However, in an unpublished opinion, the Idaho Court of Appeals recognized "a better practice would be for the district judge to allow such impeachment evidence to be admitted only after the witness has testified. While not explicitly required by the rules of evidence, this is more in harmony with the purpose behind their enactment." *State v. Osborn*, No. 34178, 2008 WL 9471214, at *3 n.2 (Idaho Ct. App. Nov. 13, 2008). Ultimately, the district court has "control over the mode and order of examining witnesses and presenting evidence[.]" I.R.E. 611(a).

In *State v. Folk*, the district court limited the defendant's ability to introduce a child's prior sworn testimony to instances when the child denied making the statement he previously made, as opposed to answers where the child stated that he could not remember making the statement. 162 Idaho 620, 629–30, 402 P.3d 1073, 1082–83 (2017). This Court affirmed the ruling, concluding that the district court has discretion to limit the admissibility of extrinsic evidence to impeach a

witness. *Id*. This Court explained, "[t]he district court recognized that Child's prior testimony could be used as extrinsic evidence to impeach Child's inconsistent statements under Rule 613 and that an admission that the prior statements were made following Child's testimony that he could not remember making the statements completed the impeachment." *Id*. Ultimately, this Court reiterated that "[t]he trial court has broad discretion in the admission and exclusion of evidence and its decision to admit evidence will be reversed only when there has been a clear abuse of that discretion." *Id*. at 630, 402 P.3d at 1083 (quoting *State v. Lopez-Orozco*, 159 Idaho 375, 377, 360 P.3d 1056, 1058 (2015)). Without a clear showing that the district court abused its discretion, this Court affirmed the district court's ruling that limited the use of extrinsic evidence to avoid confusion. *Id*.

While we recognize the broad application of Idaho Rule of Civil Procedure 32, the use of a deposition for impeachment must still be done in accordance with evidence rules. *See Slack*, 140 Idaho at 924, 104 P.3d at 966 ("Any part or all of a deposition may be used at trial, assuming compliance with Rule 32(a) of the Idaho Rules of Civil Procedure and admissibility under the Idaho Rules of Evidence."). A district court has discretion to control not only the admissibility of evidence, but the mode and order of examining witnesses and presentation of evidence. I.R.E. 611(a). Oksman has failed to demonstrate how the district court's requirement that Oksman ask Newman current or direct questions before introducing the deposition to impeach her statements constituted an abuse of discretion.

> 2. *The district court did not abuse its discretion when it overruled Oksman's objections based on leading questions*.

Next, Oksman argues that the district court erred by allowing the City to ask leading questions of a non-adverse witness. Oksman alleges that at trial, the district court erroneously allowed the City to ask leading questions of Newman, its own witness:

> Q. [by the City's counsel] You hold in-service trainings of employees based upon the employee manual; is that right?
>
> [OSKMAN'S COUNSEL]: Leading.
>
> THE COURT: Sustained. Rephrase your question, please.
>
> Q. [by the City's counsel]: Do you hold in-service training based upon the employee manual?
>
> [OKSMAN'S COUNSEL]: Leading.
>
> THE COURT: I overrule that one. Go ahead and answer.

16

Following the district court's ruling, the City's counsel continued questioning Newman about the maintenance policies in place:

> Q. [by the City's counsel] So when [Oksman's counsel] was asking you, "Is there a policy that says the lifeguard must clean and inspect the hallway with the tile area," does that fall within the expectations that the guards are expected to perform routine maintenance?
>
> [OKSMAN'S COUNSEL]: Leading.
>
> THE COURT: Overruled.
>
> [CITY'S COUNSEL]: Go ahead.
>
> [Newman]: Yes.
>
> . . . .
>
> Q. [by the City's counsel] So if I'm following you right, the rotation is every 15 to 20 minutes, and it's station to station, right?
>
> A. Correct.
>
> Q. And do the guards -- are they expected to look and do those inspections between each rotation?
>
> [OKSMAN'S COUNSEL]: Leading.
>
> THE COURT: Well, we're on cross-examination, so overruled. Go ahead.
>
> [OKSMAN'S COUNSEL]: But it's his own witness. This is [not] an adverse witness, Your Honor.
>
> THE COURT: Well, I understand that. I'm still going to overrule the objection.
>
> Go ahead and answer the question.

Oksman claims that through these questions, the district court allowed defense counsel to ask leading questions of its own witness, which is improper even on cross-examination. In response, the City emphasizes that Oksman called Newman as witness to testify during her case-in-chief; thus, the City's questioning of Newman constituted cross-examination, which permits the use of leading questions. Even if Newman were considered the City's own witness, the City argues that it did not ask impermissible leading questions.

"The law is well settled that a question is leading when it suggests to the witness the answer sought." *Collins v. Parkinson*, 98 Idaho 871, 873, 574 P.2d 913, 915 (1978). In general, "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." I.R.E. 611(c). However, "the court should allow leading questions: (1) on cross-

17

examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." *Id.*

Oksman's argument that leading questions should only be permitted with a hostile or adverse witness ignores Rule 611's specific grant of authority for the court to allow leading questions on cross-examination. Because the City was questioning Newman on cross-examination, the district court did not abuse its discretion in overruling Oksman's objections and allowing the City to ask Newman leading questions.

3. *The district court erred in declining to give Oksman's requested jury instruction.*

Oksman argues that the district court erred by instructing the jury that the loss of reasonable value of household services is a matter of general or noneconomic damages. During the jury instruction conference, Oksman asked the court to give IDJI 9.01.B.4, a pattern jury instruction, which provides:

B. Economic damages

. . . .

4. The reasonable value of necessary services provided by another in doing things for the plaintiff, which, except for the injury, the plaintiff would ordinarily have performed [and the present cash value of such services reasonably certain to be required in the future] . . . .

The district court declined to give the requested instruction because Oksman did not pay any out-of-pocket expenses for the loss of household services. The court ultimately instructed the jury on economic damages as follows:

Instruction Number 18: If the jury decides the plaintiff is entitled to recover from the defendant the jury must determine the amount of money that will reasonably and fairly compensate the plaintiff for any damages proved to be proximately caused by the defendant's negligence.

The elements of damages the jury may consider are: A., non economic damages:

Number 1, the nature of the injuries; Number 2, the physical and mental pain and suffering, past and future; Number 3, the impairment of abilities to perform usual activities; Number 4, the disfigurement caused by the injuries; Number 5, the aggravation caused by any pre-existing condition.

And, B, economic damages: Number 1, the reasonable value of necessary medical care received and expenses incurred as a result of the injury and the present cash value of medical care and expenses reasonably certain and necessary to be required in the future.

18

Whether the plaintiff has proved any of these elements is for the jury to decide.

"The propriety of jury instructions is a question of law over which this Court exercises free review." *Ballard v. Kerr*, 160 Idaho 674, 702, 378 P.3d 464, 492 (2016) (quoting *Mackay v. Four Rivers Packing Co.*, 151 Idaho 388, 391, 257 P.3d 755, 758 (2011)). When considering whether a jury instruction should or should not have been given, this Court considers "whether there is evidence at trial to support the instruction, and whether the instruction is a correct statement of the law." *Id.* (quoting *Mackay*, 151 Idaho at 391, 257 P.3d at 758). "A requested jury instruction need not be given if it is either an erroneous statement of the law, adequately covered by other instructions, or not supported by the facts of the case." *Id.* (quoting *Puckett v. Verska*, 144 Idaho 161, 167, 158 P.3d 937, 943 (2007)).

"Even where an instruction is erroneous, the error is not reversible unless the jury instructions taken as a whole mislead or prejudice a party." *Id.* (quoting *Mackay*, 151 Idaho at 391, 257 P.3d at 758). "If the instructions fairly and adequately present the issues and state the law, no reversible error is committed." *Id.* (quoting *Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 153 Idaho 716, 724, 291 P.3d 399, 407 (2012)). "Generally, an erroneous jury instruction does not justify granting a new trial 'unless the appellant can establish that he or she was prejudiced thereby, and that the error affected the jury's conclusion.'" *Id.* (citation omitted).

Below, Oksman retained an economist, Dr. Tyler Bowles, to calculate the present value of lost household services capacity as a result of the accident. During trial, Dr. Bowles opined that the amount of economic loss for Oksman's loss of household services was $168,168. Dr. Bowles explained that no out-of-pocket expense was required to demonstrate that amount as it was the *value* of various household roles and the reduction in that value due to Oksman's injuries that was quantified.

Despite Dr. Bowles's testimony providing a valuation for Oksman's services, the district court explained that it would not instruct the jury on the reasonable value of necessary services provided by another in doing things for Oksman because there was no evidence Oksman had actually incurred any out-of-pocket expenses for necessary services. Instead, the court concluded that Oksman's ability to recover the reasonable value of necessary services was covered by the instruction's statement that Oksman "is entitled to noneconomic damages for the impairment of ability to perform usual activities."

19

Oksman claims that the district court's refusal to give her proposed jury instruction on the value of the loss of household services reflected the district court's disagreement with Dr. Bowles's and Oksman's testimony and its misunderstanding of the nature of the damages. Whether the district court disagreed with Oksman and her expert or misunderstood the nature of the damages claimed, we agree that the district court appears to have misinterpreted the statutory definition of economic damages and erred in declining to instruct the jury on the reasonable value of necessary services based on the evidence presented at trial. Idaho law defines "economic damages" as:

> [O]bjectively verifiable monetary loss, including but not limited to, out-of-pocket expenses, loss of earnings, loss of use of property, cost of replacement or repair, *cost of obtaining substitute domestic services*, loss of employment, medical expenses, or loss of business or employment opportunities.

I.C. § 6-1601(3) (emphasis added).

> Meanwhile, the term "noneconomic damages" is defined as:

> *[S]ubjective, nonmonetary losses* including, but not limited to, pain, suffering, inconvenience, mental anguish, disability or disfigurement incurred by the injured party; emotional distress; loss of society and companionship; loss of consortium; or destruction or impairment of the parent-child relationship.

I.C. § 6-1601(5) (emphasis added).

At the jury instruction conference, the district court ruled that IDJI 9.01.B.4 regarding "[t]he reasonable value of necessary services provided by another" was inappropriate because there was no evidence that Oksman paid out-of-pocket for any household expenses. Oksman testified that she was unable to perform many household duties after her injury that she had performed before. She testified that her husband and children performed more duties and that some duties changed; for example, she ordered groceries on-line and picked them up curbside rather than shopping in the store. Dr. Bowles testified that her thirty hours per week of domestic chores was initially reduced by eight hours per week, and as her children reached age 13, her chores would be reduced by five hours per week.

The district court's ruling that the law requires there to have been a cash outlay for lost household services is incorrect. When Idaho Code section 6-1601(3) and (5) concerning the meaning of economic and noneconomic damages, respectively, are read together, it is clear that lost household services are an "objectively verifiable monetary loss" rather than a "subjective, nonmonetary loss." Dr. Bowles was able to assign an objectively verifiable value to the lost household services that Oksman discussed in her testimony. In addition, the plain language of

20

section 6-1601(3) *includes* but does not *limit* economic damages to out-of-pocket expenses. I.C. § 6-1601(3). Finally, the definition of economic damages specifically includes the "cost of obtaining substitute domestic services." *Id*. Accordingly, on retrial, if Oksman claims the loss of reasonable value of household services, the appropriate jury instruction on economic damages, such as IDJI 9.01.B.4, should be given.

## C. The district court's award of costs to the City as the prevailing party is vacated.

Oksman asks this Court to vacate the district court's award of costs to the City, reasoning that any determination of the prevailing party is premature based on her arguments that the case should be remanded for a new trial. We have vacated the district court's judgment entered following the jury's verdict and remanded the case for a new trial. Accordingly, we likewise vacate the district court's award of costs to the City as the prevailing party.

## D. Neither party is awarded attorney fees on appeal.

The City requests attorney fees and costs on appeal under Idaho Code sections 12-117 and 12-121. This Court has stated that "[b]oth [Idaho Code section] 12-117 and [section] 12-121 permit the award of attorney's fees to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 525–26, 387 P.3d 761, 778–79 (2015) (first alteration in original) (quoting *Nation v. State, Dep't of Corr.*, 144 Idaho 177, 194, 158 P.3d 953, 970 (2007)). The City is not the prevailing party and is not entitled to an award of attorney fees on appeal.

Oksman did not initially request an award of attorney fees in her opening brief, but in her reply brief, Oksman cites Idaho Appellate Rule 41 as authority for claiming fees after the first appellate brief is filed. Oksman then "requests fees and costs in this matter as the [c]ourt's errors were so egregious and apparent that this [a]ppeal should not have been needed and the [City's] offered defense is frivolous." In general, Rule 41 limits a party's request for attorney fees to the first appellate brief; however, it grants the Court discretion to permit a later claim for attorney fees "under such conditions as it deems appropriate." I.A.R. 41(a). In *Elliott v. Verska*, 152 Idaho 280, 271 P.3d 678 (2012), the appellant requested attorney fees on appeal in her reply brief but not her opening brief. This Court rejected her request:

> Rule 41 of the Idaho Appellate Rules states, "Any party seeking attorney fees on appeal must assert such a claim as an issue presented on appeal in the first appellate brief filed by such party ...; provided, however, the Supreme Court may permit a later claim for attorney fees under such conditions as it deems appropriate."

> Because Plaintiff did not raise the issue of attorney fees on appeal in her first appellate brief, we will not consider her request. *Bingham v. Montane Res. Assocs.,* 133 Idaho 420, 427, 987 P.2d 1035, 1042 (1999).

152 Idaho at 291, 271 P.3d at 689 (alteration in original).

Even if this Court were to overlook Oksman's failure to request attorney fees in her opening brief, which we are not inclined to do, she did not cite any authority that would support an award of fees. Although Oksman has prevailed on appeal, we decline to award attorney fees. As the prevailing party, Oksman is awarded costs as a matter of right. I.A.R. 40.

## V. CONCLUSION

The district court's judgment is vacated, and the case is remanded for a new trial. Oksman is awarded costs as a matter of right as the prevailing party on appeal.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.

22